1. MASTER AND SERVANT (§ 286*)—INJURY TO SERVANT—NEGLIGENCE—QUES-
   TION FOR JURY.
   In an action for the death of a trackwalker, struck by a north-bound
   train running on the south-bound track, the question of the railroad com-
   pany's negligence in failing to warn decedent of the approach of the
   train *held* for the jury.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§
   1010–1050; Dec. Dig. § 286.*]

2. MASTER AND SERVANT (§ 289*)—INJURY TO SERVANT—CONTRIBUTORY NEG-
   LIGENCE—QUESTION FOR JURY.
   In an action for the death of a trackwalker, struck by a north-bound
   train running on the south-bound track, the question of decedent's con-
   tributory negligence *held* for the jury.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§
   1089–1132; Dec. Dig. § 289.*]

   Smith, P. J., and Sewell, J., dissenting.

Appeal from Trial Term, Delaware County.

Action by Vincenze Di Sario, administrator of Guiseppe Di Sario,
deceased, against the New York, Ontario & Western Railway Com-
pany. From a judgment dismissing the complaint on nonsuit, plain-
tiff appeals. Reversed, and new trial granted.

The evidence justified the jury in finding the following facts: After a
heavy rain, a landslide, and at another place a washout, were discovered on
the defendant's north-bound track between Fisher's Eddy and Delaware
Tower. The defendant's man Brennan, in charge, was notified of the fact,
and called upon the plaintiff's intestate, who was a trackwalker, and others,
to assist him. The work began about 8:30 o'clock in the evening, shortly
before the north-bound train was due. Plaintiff's intestate was required to
go south upon the tracks and examine them, to discover if any other wash-
outs or slides had occurred. The other men succeeded in removing the land-
slide from the track, and were at work at the washout when the plaintiff's
intestate, in about 40 minutes, returned, reporting the tracks all right, and
was sent northerly to ascertain the condition there. The washout was not
a general washout of the tracks, but water had washed through between the
ties and removed some of the ballast. It does not appear that its condition
was such that it would have prevented the passage of trains over it, and
Brennan and none of the men at work under him had any idea that the
north-bound train would proceed otherwise than upon the north-bound track.
It had not been known at this place before that time to go upon the south-
bound track. Unbeknown to Brennan and those with him, the north-bound
train had been directed to switch over upon the south-bound track, and to
proceed over it slowly, giving the necessary signals. It was necessary to run
slow and use extra precautions, because the men were liable to be on the
track unaware that the train was coming upon it. The north-bound train
came at from 20 to 45 miles an hour over the south-bound track, passing
Brennan and those working with him on the north-bound track, and about
2,000 feet northerly from where Brennan was at work, at a curve in the
track, it ran against and killed the intestate, who was walking along and
about 2 feet south of the southerly rail on the south-bound track. Brennan
swears he heard the train whistle as it was approaching him about 1,000
feet distant, and the next whistle he heard was the danger signal, which was
sounded after the engineer saw the intestate and when he was within 100 or
150 feet of him. On account of the curve in the track the engineer was un-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

able sooner to see the intestate carrying a lantern. Brennan swears the bell was ringing as it passed him, and the men upon the train swear that it rang continuously while they are proceeding on the south-bound track. The engineer last blew the whistle before the danger signal about half a mile from the accident. The plaintiff's witnesses, some of whom were apparently in a position to hear the whistle, if sounded, testified that the whistle did not blow nor the bell ring. They did not hear it. One of them was standing near the track, some distance away, watching the track and the approaching train. There was a curve in the track going through a cut or embankment just before the engine reached the intestate. The nonsuit was granted upon the ground of the intestate's contributory negligence, and want of negligence upon the part of the defendant. There was a strong headlight in front of the engine; but some bystanders, one side of, but near, the track, swore that it was so bright they could not determine which track the train was proceeding upon.

Argued before SMITH, P. J., and KELLOGG, COCHRANE, SEWELL, and HOUGHTON, JJ.

Thomas J. O'Neil (L. F. Fish and Andrew Byrne, on the brief), for appellant.

Samuel H. Fancher (C. L. Andrus, of counsel), for respondent.

JOHN M. KELLOGG, J. The fact that the north-bound train at this place had never proceeded upon the south-bound track gave the intestate a certain right to assume that that course would not be departed from. He undoubtedly saw the reflection of the headlight. He may have heard the whistle a half a mile away; but that did not give him warning that the train was upon the wrong track. The instructions to the engineer to give the necessary signals in order to notify men of the change in the course of the train did not necessarily imply that the whistle would only be sounded every half mile. The curves in the track, the embankment, the whole situation, present a question for the jury to determine whether a sufficient warning was given the intestate that a change had been made in the plan of running this train. If the track had been straight, perhaps he could more easily have determined upon which track the engine was coming; but the curve in the track before it reached him threw a greater uncertainty upon it. The washout upon which Brennan and the men were working does not appear of such a character as to notify or warn the intestate that the train could not pass upon that track. Apparently, from its condition as described, he might assume that the train could pass over it. The intelligence of the man, the condition of the track, the curves, and all the circumstances are proper questions for the jury to consider in determining whether the intestate acted as an ordinarily prudent man in his position would act, or whether he was guilty of a carelessness which brought about his death. It was for the jury to determine whether he knew or had sufficient notice that the train was proceeding upon the southerly track, or whether he felt that he was proceeding in a safe place, notwithstanding the fact that he could hear the rumbling of the train and see the reflection of the lights.

Brennan swears that he had told the men, when a train was coming on either track, to get off from both tracks; but the evidence tends to

show that he and his gang continued to work upon the north-bound track while the train was passing them on the south-bound track, after they discovered upon which track it was proceeding. It cannot be said, as matter of law, that the defendant gave the intestate sufficient warning, or that the intestate was guilty of negligence which caused his death.

The judgment should therefore be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur, except SMITH, P. J., and SEWELL, J., who dissent.