(158 App. Div. 801.)

FITZGERALD v. ERIE R. CO.

(Supreme Court, Appellate Division, Fourth Department. November 12, 1913.)

1. RAILROADS (§ 359*)—OPERATION—DUTY TO TRESPASSER.

  To a trespasser on its tracks, a railroad owes no further duty than not to willfully injure him.

  [Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1238, 1239; Dec. Dig. § 359.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. MASTER AND SERVANT (§ 137*)—INJURY TO SERVANT—RAILROADS—DUTY TO TRACKWALKER.

The degree of care to be exercised by a railroad toward a trackwalker, while not as great as the care required toward a stranger at a crossing, is yet greater than the duty of not willfully injuring him.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 269, 270, 273, 274, 277, 278; Dec. Dig. § 137.*]

3. MASTER AND SERVANT (§ 286*)—SERVANT'S INJURIES—QUESTION FOR JURY—NEGLIGENCE.

In an action for the death of a trackwalker struck by a west-bound train running on the east-bound track, *held*, on the evidence, that the question of the engineer's negligence in not seeing or warning the deceased was for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. § 286.*]

4. MASTER AND SERVANT (§ 185*)—INJURY TO SERVANT—FELLOW SERVANT.

The negligence of an engineer in failing to see or warn a trackwalker was imputable to the defendant railroad.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 385–421; Dec. Dig. § 185.*]

5. MASTER AND SERVANT (§ 286*)—INJURIES—TAKING CASE FROM JURY.

Where there was some evidence in an action for the death of a trackwalker justifying the inference of negligence for which the defendant railroad was responsible, the case should have been submitted to the jury, and it was error to direct a nonsuit.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. § 286.*]

Appeal from Trial Term, Cattaraugus County.

Action by Catherine Fitzgerald, as administratrix of Peter Fitzgerald, deceased, against the Erie Railroad Company. From a judgment of nonsuit, plaintiff appeals. Reversed, and a new trial granted.

Argued before KRUSE, P. J., and ROBSON, FOOTE, LAMBERT, and MERRELL, JJ.

H. P. Nevins, of Salamanca, for appellant.

James P. Quigley, of Salamanca, for respondent.

LAMBERT, J. Between Carrollton, on the east, and Salamanca, on the west, the defendant operates, as a part of its system between New York and Chicago, a double-track railroad, of which the north track is ordinarily used for west-bound trains and the southerly track for those east bound. Plaintiff's intestate was a trackwalker, residing at Carrollton, close by the defendant's right of way, and had been engaged in such occupation for years. A few hundred feet distant, and practically parallel to defendant's road, is the line of the B. R. & P. Railroad Company.

On the day of the accident, defendant left his home shortly before 7 o'clock in the morning to patrol the track west towards Salamanca. He carried the ordinary tools of such occupation, i. e., a flag, wrench, and spike maul. His work was the inspection of the track, the remedying of slight defects discovered by him, and the protection of trains from any discovered defects.

*For other cases see same topic & § NUMBER in Dec. & Am Digs. 1907 to date, & Rep'r Indexes

When he left his home, No. 5, a fast passenger train from New York west bound, stood on the north or west-bound track, headed west, near the Carrollton station. Intestate was observed to start west, on the east-bound or south track; that is, against the so-called current of traffic. After his departure, No. 5 backed up to a cross-over switch, onto the east-bound track, and then proceeded west on the east-bound track. Some time after the departure of No. 5, the body of intestate was discovered lying beside the east-bound track, with injuries on the rear left side of the body and with a gash in the forehead, filled with cinders. No other train had passed, in the meantime, on defendant's road. Apparently, no one saw the accident. The morning was rather foggy, and the slight evidence in that connection indicates that the range of vision was about 300 to 400 feet. There is no proof of the speed of the train, other than the characterization of various witnesses that it was running fast, that it was a fast passenger train, and that it was behind its schedule. It further appears that a freight train passed the place of accident, upon the B. R. & P. at about the time of the accident. There is evidence from which it may be inferred that No. 5 gave no signals of any kind from the time it left Carrollton until after the accident. The train did not stop after the accident, and from such fact it may be inferred that the engineer did not know that he had struck intestate.

A nonsuit was granted, and its correctness depends upon the issue of the negligence of the defendant, as all other questions upon this record were clearly for the jury.

The determination of defendant's negligence must depend primarily upon the duty, if any, owing to intestate by defendant in connection with the operation of this train. In this connection, it is to be conceded that defendant had a perfect right to operate this train "left-handed" against the traffic. Its duty to intestate, in some degree, must, however, be conceded. Intestate does not stand in the position of a trespasser, with no right or duty to perform on the track.

[1] To a trespasser the defendant would owe no further duty than not to willfully injure him. But with this man necessarily upon the track, in the performance of his duties, clearly some degree of care was to be exercised not to injure him. The situation was not an emergency. It was the time of day when it was to be anticipated that employés engaged in the maintenance of the right of way would be engaged along the right of way.

[2] The degree of care to be exercised by the defendant would not be as great, of course, as its care towards a stranger at a crossing, because of the familiarity of intestate with the manner of operation of the railroad and because of his employment. But somewhere between the duty to a trespasser and the duty to a stranger at a crossing is to be found the duty owing in this case, even if the train was being operated upon the right-hand track.

[3] It seems equally plain that such duty was increased by the special circumstances here present. The defendant, for its convenience or because of its necessities, chose to operate this train in an unusual manner and upon a track where ordinarily the trains ran in the con-

trary direction. Of this change, the intestate was given no notice. The morning was foggy, and the ordinary warning from the rumble of the train was diminished by the noise of the freight train on the other railroad. Of all these circumstances the engineer had knowledge, and that knowledge increased his duty of vigilance. His failure to see intestate must be ascribed to either an obstructed vision, by reason of the fog, or a lack of diligence in keeping a lookout ahead; and, under either circumstance, together with the failure to give any signals, it seems clear that a case was made requiring the submission of the negligence of the engineer, under the circumstances, to the jury as one of fact. Di Sario v. N. Y., O. & W. R. R. Co., 142 App. Div. 159, 126 N. Y. Supp. 984.

[4] The negligence, if any, of the engineer is imputable to the defendant. Sereno v. D., L. & W. R. R. Co., 145 App. Div. 136, 129 N. Y. Supp. 159.

It may be that with the evidence of both sides in the case, the weight of the evidence will be such as to require a verdict for plaintiff to be set aside. But that question is not here on this record.

[5] Having reached the conclusion that there is some evidence justifying the inference of negligence for which the defendant is responsible, the case should have been submitted to the jury under the doctrain of McDonald v. Met. Ry. Co., 167 N. Y. 66, 60 N. E. 282, since followed by many similar holdings.

The judgment should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.

---

(159 App. Div. 298.)

GRECO v. LONG ISLAND R. CO.

(Supreme Court, Appellate Division, Second Department. November 28, 1913.)

1. CARRIERS (§ 344*)—INJURIES TO PASSENGER—CONTRIBUTORY NEGLIGENCE—PRESUMPTIONS.

The boarding of a moving railroad train is presumptively negligent.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1399; Dec. Dig. § 344.*]

2. CARRIERS (§ 346*)—INJURIES TO PASSENGER—EVIDENCE—CONTRIBUTORY NEGLIGENCE.

Evidence, in an action by a railroad employé for injuries in boarding a train moving at from 2½ to 3 miles an hour, held not to sustain a finding that plaintiff was free from contributory negligence in boarding the moving train.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1401; Dec. Dig. § 346.*]

Appeal from Trial Term, Queens County.

