ANNIE L. INGHAM, as Administratrix, etc., of CHARLES S. INGHAM, Deceased, Appellant, *v.* THE NEW YORK, ONTARIO AND WESTERN RAILWAY COMPANY, Respondent.

Third Department, March 6, 1918.

Appeal — right of plaintiff who has been nonsuited to favorable view of evidence — railroad — negligence — death of track repairer struck by train — judicial notice — not negligence to operate passenger trains at forty miles per hour in thinly-populated districts — assumption of obvious risks — duty of railroad company toward track repairers.

A plaintiff who has been nonsuited is entitled to have his appeal considered from the standpoint of the most favorable view which the jury might be authorized to find from the evidence.

In an action against a railroad company for the death of a track repairer struck and killed by defendant's engine and train running on its schedule time in a rural community, no degree of negligence can be predicated upon the rate of speed, where it appears that the train was exactly on time and was running at the usual rate of forty miles per hour.

The court will take judicial notice of the fact that it is not negligence to operate passenger and mail trains at forty miles an hour in thinly-populated districts, where reasonable precautions are maintained at grade crossings.

The nature of the work to be performed by a track repairer, including the watching of the track and keeping it in a safe condition for continuous traffic, involves elements of danger, but they are known and obvious and must be presumed to have been within the contemplation of the parties when entering into the contract of employment.

Such an employee who had been at work on the same road for eight days and had had previous experience in railroad work, must be presumed to have accepted the known and obvious risks of such employment, and the

company owed him no other duty than to operate its trains in the usual manner and to refrain from wantonly doing him an injury.

The company was not bound to have a section foreman present for the purpose of giving warning to trackmen of the approach of trains.

APPEAL by the plaintiff, Annie L. Ingham, as administratrix, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Chenango on the 20th day of April, 1917, upon a dismissal of the complaint by direction of the court at the close of plaintiff's case, and also from the order of nonsuit.

*David F. Lee,* for the appellant.

*William H. Sullivan,* for the respondent.

WOODWARD, J.:

The plaintiff has been nonsuited, and is, of course, entitled to have this appeal considered from the standpoint of the most favorable view which a jury might be authorized to find from the evidence.

On the 8th day of March, 1916, plaintiff's intestate was employed by the defendant as a track repairer, cleaning snow from the tracks and doing the work of a section hand. The defendant is conducting an interstate commerce railroad, and this action is governed by the provisions of the Federal Employers' Liability Act (35 U. S. Stat. at Large, 65, chap. 149, as amd. by 36 id. 291, chap. 143.) The complaint alleges that while the plaintiff's intestate was so employed, and at about four-fifty P. M. of that day, and while at work upon the tracks of the defendant at a point or place about 200 feet south of the depot of the defendant, at Galena, Chenango county, N. Y., and a short distance westerly from the highway crossing at that place, he was struck and killed by an engine and train of the defendant, operated by the servants of the defendant who were engaged at the time as common carriers in interstate commerce. The negligence relied upon is stated as follows:

" That said injury and death were caused through the negligence and carelessness of the defendant, its agents, servants and employees, engaged in the operation of said

train in failing to give proper and suitable warnings to plaintiff's intestate, while engaged in the repair of the tracks of that place, and in operating said train at a dangerous and excessive rate of speed, and was caused through the negligence and carelessness of the agents, servants and employees of the defendant engaged in the business of interstate commerce and who were engaged in the same business with plaintiff's intestate, and particularly the foreman of the defendant, Luther Nicholson, which employees failed to give plaintiff's intestate timely and suitable warning of the approach of said train in violation of their duties to plaintiff's intestate."

The evidence discloses that the plaintiff's intestate was set at work on the day of the accident at the point indicated in the complaint in clearing the snow from the main track at the point where it is intersected by a switch; that the day was stormy, and that the defendant's train, which might be clearly seen for a distance of half a mile, struck the plaintiff's intestate, killing him. There is no dispute that the train was exactly on time, and that it was running at the rate of forty miles per hour in maintaining its scheduled running time, but it is entirely clear that no degree of negligence is to be predicated upon the rate of speed maintained in this rural community. The evidence is to the effect that this train had been making practically this same run at the same hour for a period of thirty years or more, and this court will take judicial notice of the fact that it is not negligent to operate passenger and mail trains at forty miles an hour in thinly-populated districts, such as is involved in the present case, where reasonable precautions are maintained at grade crossings.

The question involved here is not the duty of the railroad company at a grade crossing, but its duty to a section hand, and as the rate of speed was not such as to involve liability, the only other question is whether the defendant was under obligations to furnish a man to keep watch and to notify the plaintiff's intestate of the approach of a regularly scheduled passenger and mail train, concededly maintaining its regular running time, and arriving at the point of the accident on time. The duty of the master to furnish a reasonably safe place for the employee to work is undoubtedly fulfilled in the case of a railroad corporation, in the employment of

section hands, when it has furnished a roadbed and right of way free from any hidden dangers. The very nature of the work to be performed, the watching of the track and keeping it in a safe condition for continuous traffic, involves elements of danger, but they are known and obvious, and must be presumed to have been within the contemplation of the parties in entering into the contract of employment. " ' It is the duty of the master to use reasonable care to provide for the servant, so far as the work at which he is engaged will permit, a reasonably safe and proper place in which to do his work, and to that end, if the place may become dangerous by reason of perils arising from the doing of other work pertaining to the master's business, different from that in which the particular servant is engaged, to give him such warning of the additional dangers as will enable him, in the exercise of reasonable care, to avoid them, or to guard himself against them.' " (*Blanchard* v. *D., L. & W. R. R. Co.*, 211 N. Y. 79, 83, 84, and authorities cited.) But here the nature of the work required that it be done while the defendant maintained its traffic; there was no contract, expressed or implied, that the defendant was to suspend any of its functions as a public service corporation, and the decedent had been at work on this particular railroad for eight days, and had previous experience in railroad work, so that he must be presumed to have accepted the known and obvious risks of such an employment, and we apprehend that the defendant owed him no other duty than to operate its trains in the usual manner, and to refrain from wantonly doing him an injury. The rule which has been applied in great cities, with congested traffic and limited opportunities for performing the work between trains, has no application to a single-track railroad operated in rural districts  pon a fixed schedule, particularly where the train is shown to have been operated on schedule time, and the suggestion that it was the duty of the defendant to have the section foreman present for the purpose of giving warning of the approach of this particular train is obviously without force. There were two men doing this particular work on the day in question. It was nothing unusual; they were doing their regular work and the train which produced the accident was operated in the usual way. The evidence is undisputed

that the whistle of the engine was blown at the approach to the point where the plaintiff's intestate was at work, though it is probable that this had no relation to the decedent, but was for the purpose of having the grade crossing just beyond clear of obstruction, and this was the obvious purpose of the automatic bell, which was shown to have been ringing, and which was set in motion by the coming train at a time when it was 1,500 feet from the decedent, and about 1,700 feet from the crossing.

We lay no stress upon these matters; they were not designed for the protection of employees engaged in the particular work then in hand. The defendant did not subject the deceased to any additional dangers such as were involved in the *Blanchard Case* (*supra*); it simply did exactly what was contemplated in its contract with the decedent. It put him at work maintaining the tracks in that particular section for the safety of the traffic generally, and it operated its train in exactly the manner that it was under obligations to do under its schedules, which were available to the deceased in common with the public and employees generally. This section covered a territory of about five miles, and these employees were liable to be at any point along this section, just as like employees were likely to be found at every rod of the way along the entire line of the railroad, and it is obviously impracticable for a railroad to operate if it must be on the lookout for and give warning to every group of laborers engaged in maintaining the tracks and sidings. In this particular case the decedent was put to work near a grade crossing, and the automatic bell at this crossing, which was within the hearing of the decedent, was ringing during the time that the train was running 1,500 feet prior to the accident, and the engine whistle appears to have been sounded for the grade crossing, so that all was done which the circumstances required to be done, in so far as the operation of the train was concerned.

It seems to us equally clear that the defendant did not owe the duty of having the foreman with each individual or group of individual employees engaged in this particular work of maintaining the way. It would impose a burden which common experience shows to be wholly unnecessary under the

circumstances of this case.   If trains were passing and repassing at intervals of a few minutes, so that it was impracticable to work and maintain that degree of care necessary for the safety of employees, it might be that such a duty would arise from the special circumstances, but on a single-track railroad on which trains pass only in one direction at a time, and at intervals indicated by fixed and available schedules, where there is nothing to distract the workman, it is absurd to argue that the defendant neglected any duty owed to the decedent in not providing a foreman to be constantly present with the decedent to warn him of approaching trains.   The accident occurred in daylight, where the decedent by a glance could see a train approaching for a distance of half a mile, and we are fully persuaded that he knew and accepted all of the dangers of the employment, and that he was not exposed to any which did not come fairly within the scope of such employment.

The judgment of nonsuit should be affirmed, with costs.

Judgment unanimously affirmed, with costs.