PAOLO SACCO, as Administrator, etc., of LUIGI SACCO, Deceased, Appellant, *v.* THE DELAWARE AND HUDSON COMPANY, Respondent.

Third Department, July 1, 1925.

Railroads — injury to employee while working on track — action under Federal Employers' Liability Act to recover for death of plaintiff's intestate who was killed while working on north-bound track — that track was properly flagged against trains passing either north or south thereon — north-bound train was passing slowly over north-bound track — intestate stepped on south-bound track as regular south-bound train, running on time, approached around curve — no liability can be predicated on failure of engineer on south-bound train to slow down or give warning signal — defendant not liable on theory that it failed to furnish reasonably safe place to work — foreman not required to warn all employees — intestate assumed risk — trial — not reversible error to refuse to allow plaintiff to examine engineer after motion for nonsuit.

In an action under the Federal Employers' Liability Act to recover for the death of plaintiff's intestate, an employee of the defendant railroad, who was engaged in work on the north-bound track, in which it appears that that track was properly flagged against trains passing either north or south thereon, and that as a north-bound train approached, passing over the track on which the intestate was working, he stepped onto the south-bound track and was struck and killed by the regular south-bound train running on time, as it approached around a curve, the liability of the defendant cannot be predicated on the failure of the engineer on the south-bound train to slow down or to give a warning signal as the train approached the place where the work was being done. The defendant was not required to restrain traffic on the south-bound track, for plaintiff's intestate was not required to be on that track in the performance of his duties.

The defendant is not liable on the theory that it failed to furnish a reasonably safe place for the intestate to perform his work, and the foreman of the gang of which the intestate was a member was not required to give warning to all the employees of the approach of a train on the south-bound track, for the intestate knew of the conditions and dangers surrounding the work in which he was engaged, and the risk of working in that position was one of the ordinary risks which the intestate, in his contract of employment, assumed.

It was not error for the court, after a motion for nonsuit was made, to refuse to permit the plaintiff to further examine the defendant's engineer as to the speed of the train on the south-bound track, for no action of negligence can be predicated upon the speed of that train.

McCANN, J., dissents.

APPEAL by the plaintiff, Paolo Sacco, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Schenectady on the 6th day of February, 1924, upon the dismissal of the complaint upon the merits at the close of the entire case, and also from an order entered

in said clerk's office on the same day, granting defendant's motion for a nonsuit.

The defendant had been changing the rails on the north-bound track of its double-tracked line between Oneonta at the north and Unadilla at the south. The deceased was one of the working gang consisting of some fifteen or more men with a foreman or roadmaster, Crowley. The north-bound track was the easterly track and no work was being done upon the westerly or south-bound track. This gang of men had been doing this work for some two or three weeks. They came down by handcar from Oneonta in the morning and at night so returned to Oneonta; thus every morning and evening during the progress of this work the deceased had passed over the portion of the line where he was killed and between that and Oneonta. A rule of the company at the time provided: " A yellow flag or a yellow light, placed beside the track on the same side as the engineman of an approaching train indicates that the track 3,000 feet or 20 telegraph poles distant is in a condition for a speed of but six miles per hour unless otherwise instructed, and the speed of trains will be controlled accordingly." The engineman's side is the right-hand side. There had been placed, in compliance with this rule, the proper distance to the south of the work being done, a yellow flag on the easterly, the engineman's, side of the north-bound track and to the north a like flag was placed on the westerly side of the north-bound track; that is, between the north-bound and south-bound tracks. The two flags as placed, therefore, applied to but one track, the north-bound, and the northerly flag was to protect against engines running against the regular traffic, namely, running south on the north-bound track; the purpose of the rule being to protect men against trains coming from either direction upon the track being repaired. When the accident occurred shortly after three o'clock in the afternoon the repair work for the day had been completed. Crowley had directed the men to pick up the tools. While doing this the men were scattered along the track a distance of some 1,400 feet; a freight train then came along very slowly, going north on the north-bound track. Most of the men stepped to the easterly side of the train as it approached. Only the deceased and another, Stefano, stepped to, or remained on, the westerly side of the freight train, that is, between the two tracks or on the south-bound track. The milk train, which left Oneonta at three o'clock every afternoon and reached the place of the accident substantially at the same time each day on the south-bound track, struck and killed the deceased. No signal from the approaching train was given, nor did he receive any special warning of its approach.

*Leary & Fullerton* [*Walter A. Fullerton* of counsel], for the appellant.

*Lewis E. Carr*, for the respondent.

VAN KIRK, J.:

The action was brought under the Federal Employers' Liability Act (35 U. S. Stat. at Large, 65, chap. 149, as amd. by 36 id. 291, chap. 143) to recover damages for the death of Luigi Sacco, alleged to have been caused by the negligence of the defendant. The appellant claims that the defendant was negligent in three respects:

1. "The speed of the milk train was excessive."

2. "The engineer of the milk train gave no warning by bell or whistle." These two may be treated together. There was a curve in the line and within this curve and near the tracks was an embankment which obscured from the engineman, on this southbound milk train, the track where deceased was killed until the train had nearly reached it. There was no circumstance requiring any lessening of speed or any signal at this point, unless it be because the repair gang were there working. But they were not working upon the south-bound track; no signals were out to warn an engineer running on the south-bound track and none were required. The defendant was not required to interfere with its regular traffic upon the track which was not being repaired; it was rendering a public service. The engineman on the south-bound train had no warning that men were working on his track; and had no reason to believe, nor had the defendant reason to believe, that men working on the north-bound track would be injured by a train on the south-bound track. There is no proof that the milk train was going at a speed higher than its usual speed. The engineers on the north-bound track had warning from the flags; the engineers on the south-bound track had no warning. We think that no liability can be predicated on account of the failure of the engineer on the milk train to either slow down his train or to give the signal by bell or whistle.

3. "No warning whatever was given decedent of the approach of this train." The appellant contends that the yellow flag to the north was misplaced; that it should have been placed to the engineman's side of the south-bound track rather than between the tracks. This contention is faulty; the warning was intended to be and should be for the north-bound track. Had it been on the engineman's side of the south-bound track, it would not have been a warning to traffic on the north-bound track. Had it failed to warn against a train going south on the north-bound track, and in consequence an employee had been injured, defendant could

have been held negligent. Trains do sometimes run against the traffic; it is at times necessary to shift from one track to the other, and it was the duty of the defendant to place the flag under its rule against unusual traffic going south on the north-bound track. (*Di Sario* v. *N. Y., O. & W. R. Co.,* 142 App. Div. 159.) As above stated, the defendant was not called upon to interfere with its traffic on the south-bound track. The flag to the north was where the rule required it to be and where it should be.

Was any other warning required? In the track and roadbed there were no concealed dangerous places or things, and in this respect the defendant had furnished a reasonably safe place to work; no warning of hidden dangers was called for. There remains the principle quoted in *Blanchard* v. *D., L. & W. R. R. Co.* (211 N. Y. 79, 83): " It is the duty of the master to use reasonable care to provide for the servant, so far as the work at which he is engaged will permit, a reasonably safe and proper place in which to do his work, and to that end, if the place may become dangerous by reason of perils arising from the doing of other work pertaining to the master's business, different from that in which the particular servant is engaged, to give him such warning of the additional dangers as will enable him, in the exercise of reasonable care, to avoid them, or to guard himself against them." The danger in the case at bar was from trains on the south-bound track; the repair gang were necessarily near a place of danger on this account. But we think the deceased was given such warning of the additional dangers as enabled him, in the exercise of reasonable care, to avoid them; and that the defendant, so far as the work would permit, had used reasonable care to protect him from injury. He had been working for weeks on this same north-bound track and beside the south-bound track. The milk train which struck him was a regular train, and he knew approximately the time it was due. During the making of these repairs there had been no interference with the regular trains on the south-bound track and each member of the gang knew this. They were also familiar with the line at the place of the accident and its condition. The freight train passing on the north-bound track at the time of the accident had obeyed the signal and was proceeding very slowly. His attention was called to it. All the men except deceased and Stefano had stepped to the easterly side of the track as the train approached. There was time to avoid danger from this train and all save deceased did avoid it. They exercised reasonable prudence; he did not. Further it would not be necessary or prudent to place tools on the south-bound track where the regular traffic was being carried on; a heavy tool across a rail could wreck a train. There is no evidence

that tools were in fact placed, or allowed to be placed, on the south-bound track; there was plenty of room for all tools along, and easterly of, the track being repaired. No necessity of his work called upon deceased to step between the tracks; he was free to stop work while the freight train passed. To avoid the danger from which he suffered required no special knowledge, but only reasonable prudence. The defendant in the exercise of reasonable care to protect its employees would not foresee that any special warning of this danger to deceased was called for. The men collecting the tools were scattered for some distance along the track. It seems to us that this railroad company should not be required to have a foreman with every man working on its tracks, scattered as they are likely to be, to warn them of the approach of a regular train on the adjoining track. We agree with the statement of this court in *Ingham* v. *N. Y., O. & W. R. Co.* (182 App. Div. 112, 116): " It seems to us equally clear that the defendant did not owe the duty of having the foreman with each individual or group of individual employees engaged in this particular work of maintaining the way. It would impose a burden which common experience shows to be wholly unnecessary under the circumstances of this case.'' It is true this was said of a single-track railroad, in which trains pass in but one direction at a time. But deceased in this case was working on but one track of the railroad; the train which killed the deceased was a regular scheduled train on the immediately adjoining track and there was nothing unusual or irregular in its movement.

In our view this risk was one of the ordinary risks which the employee, under his contract of employment, assumes. The employee assumes those risks which " are incident to his employment, after the master has discharged his duty of reasonable care to prevent them, or such as are quite as open and obvious to the servant as the master." (*Eastland* v. *Clarke*, 165 N. Y. 420, 427.) The deceased certainly knew the risk of being upon the south-bound track when a train was passing and that trains did pass regularly upon this track; he knew of the existing curves and physical condition. There was no implied agreement that defendant would suspend its operation as a public service corporation on its other track and the repair work had to go on while such traffic was being conducted. The deceased, who had been working for a considerable period in the track repair gangs of this defendant, must have known and assumed the risks of injury from regular trains passing upon this south-bound track. As to the traffic on this track, and on this record, we think the defendant owed the deceased no duty further than to operate its trains in the usual

manner and at the accustomed times, and to do him no injury which, upon realizing his danger, could have been reasonably avoided. . There can be no claim here that any injury was wantonly inflicted, or that, after the dangerous position in which this man was had been discovered, anything could have been done to have avoided the injury. The nature of the work deceased was doing was dangerous, but the risks were known and obvious; they must have been in contemplation of the parties when the deceased was employed. This rule is applied in the Federal courts. (*Connelley* v. *Penn. R. Co.*, 228 Fed. 322; *Norfolk & W. R. Co.* v. *Gesswine*, 144 id. 56; *Seaboard Air Line* v. *Horton*, 233 U. S. 492.)

It hardly needs mention that, if the accident happened without negligence upon the part of the defendant, but was due to the negligence of the deceased, there could not be a recovery. If the death was due to the passing of the freight train, no liability therefor rests upon defendant. The deceased could readily have avoided the injury by stepping to the easterly side of the north-bound track, as did all the other employees, save two. Defendant's negligence was not the proximate cause of the death. (*Aerkfetz* v. *Humphreys*, 145 U. S. 418.)

We do not think the trial court committed a reversible error in refusing, after the motion for a nonsuit, to allow the plaintiff to further examine the defendant's engineer as to the speed of the train; because, as above stated, we think no actionable negligence can be predicated upon the speed of the train on the south-bound track.

The judgment should be affirmed, with costs.

All concur, except McCann, J., dissenting.

Judgment affirmed, with costs.