(138 So. 231)

## LOUISVILLE & N. R. CO. v. PARKER.

### 6 Div. 471.

Supreme Court of Alabama.

June 27, 1931.

Rehearing Denied Dec. 3, 1931.

F. E. St. John and A. A. Griffith, both of Cullman, Chas. H. Eyster, of Decatur, and Steiner, Crum & Weil, of Montgomery, for appellant.

W. A. Denson, of Birmingham, for appellee.

**634**

**THOMAS, J.**

The action was under the Federal Employers' Liability Act (45 USCA §§ 51–59) to recover damages for the alleged negligent death of the husband of appellee. The trial was had on amended count 1.

The pleas were amended three times after demurrer, and said rulings are assigned or argued as error and will be so considered. The demurrers to original pleas 3 to 12, inclusive, seeking to set up defense of assumption of risk, being sustained, these rulings are separately assigned for error. The facts averred of such affirmative defense denying liability (and not by way of diminution of damages, Burton & Sons Co. v. May, 212 Ala. 435, 439, 103 So. 46) must be stated, not by conclusion, but by the facts specially pleaded in a succinct statement thereof that must show that the specific risk was here assumed. Smith v. Louisville & Nashville R. Co., 219 Ala. 676, 123 So. 57; Dwight Manufacturing Co. v. Holmes, 198 Ala. 590, 593, 73 So. 933, and au-

thorities; Alabama Great Southern Ry. Co. v. Skotzy, 196 Ala. 25, 71 So. 335; Russell v. Bush, 196 Ala. 309, 311, 71 So. 397, and authorities; King v. Woodward Iron Co., 177 Ala. 487, 59 So. 264; Mobile Electric Co. v. Sanges, 169 Ala. 341, 351, 53 So. 176, Ann. Cas. 1912B, 461; Foley v. Pioneer Min. & Mfg. Co., 144 Ala. 182, 40 So. 273; Osborne, Adm'x, v. Alabama Steel & Wire Company, 135 Ala. 571, 575, 33 So. 687. That is, when the plea alleges facts constituting such affirmative defense per se in bar of the action, such pleading need not expressly characterize plaintiff's acts as risk assumed. Smith v. Louisville & Nashville R. Co., supra; Hurt v. Southern Ry. Co., 205 Ala. 179, 87 So. 533. And it should be further said of a sufficient plea of assumption of risk, that it must show the risk set up was an ordinary risk; that is, a risk that is normally incident to and to be expected of that employment, *and not one merely created by the negligence of the employer*. If the averment is of an extraordinary risk of the employment in question, such pleading must show that the same was fully known to the persons sought to be charged, or that its nature and character were so obvious that all persons engaged in and about that business and employment would naturally and reasonably know such risk and danger were incident thereto to those while in the exercise of ordinary care, and that they would appreciate such a risk and decline to go forward with their duties under such circumstances, or remain under such existing conditions without assurance—and so appreciating and remaining are deemed to have assumed the risk of danger known to them. Bierley v. Shelby Iron Co., 208 Ala. 27, 93 So. 829; L. & N. R. Co. v. Jacobson, 218 Ala. 384, 118 So. 565; S. A. L. Ry. Co. v. Johnson, 217 Ala. 251, 254, 115 So. 168; Louisville & Nashville R. Co. v. Hall (Ala. Sup.) 135 So. 466.[1] This is the statement of the rule that applies in federal courts. C., R. I. & P. R. Co. v. Ward, 252 U. S. 21, 40 S. Ct. 275, 64 L. Ed. 431; Boldt v. Penn. R. R. Co., 245 U. S. 445, 38 S. Ct. 139, 62 L. Ed. 385; Chesapeake & O. R. Co. v. De Atley, 241 U. S. 310, 36 S. Ct. 564, 60 L. Ed. 1016; Gila Valley, Globe & Northern R. Co. v. Hall, 232 U. S. 94, 34 S. Ct. 229, 58 L. Ed. 521, 524; 47 L. R. A. 161.

This court has said under the Federal Employers' Liability Act that employment does not involve the employee in general assumptions of risk resulting from the negligence of his coemployees (Louisville & N. R. Co. v. Porter, 205 Ala. 131, 135, 87 So. 288, and many authorities; Gulf, M. & N. R. Co. v. Williams, 218 Ala. 481, 119 So. 212; Louisville & N. R. Co. v. Morrill, 211 Ala. 39, 42, 99 So. 297; Louisville & N. R. Co. v. Fleming, 194 Ala. 62, 69 So. 125); and that the employee is not required to exercise care to discover dangers not ordinarily, naturally, and

---

[1] Ante, p. 338.

reasonably incident to the employment in which he is engaged, and which danger is but the result of the employer's negligence or that of his coemployees. Woodward Iron Co. v. Wade, 192 Ala. 651, 68 So. 1008; S. A. L. Ry. v. Hackney, 217 Ala. 382, 115 So. 869; Roberts v. Pell City Mfg. Co., 197 Ala. 106, 72 So. 341; Louisville & N. R. v. Porter, supra; Chesapeake & O. R. Co. v. Proffitt, 241 U. S. 466, 36 S. Ct. 620, 60 L. Ed. 1106; Louisville & N. R. Co. v. Brown, 77 Fla. 64, 81 So. 156; Chesapeake & O. R. Co. v. De Atley, supra.

In Seaboard A. L. R. Co. v. Horton, 233 U. S. 492, 34 S. Ct. 635, 640, 58 L. Ed. 1062, 1070, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475, it is declared by Mr. Justice Pitney:

"Some employments are necessarily fraught with danger to the workman,—danger that must be and is confronted in the line of his duty. Such dangers as are normally and necessarily incident to the occupation are presumably taken into the account in fixing the rate of wages. And a workman of mature years is taken to assume risks of this sort, whether he is actually aware of them or not. But risks of another sort, not naturally incident to the occupation, may arise out of the failure of the employer to exercise due care with respect to providing a safe place of work and suitable and safe appliances for the work. These the employee is not treated as assuming until he becomes aware of the defect or disrepair and of the risk arising from it, unless defect and risk alike are so obvious that an ordinarily prudent person under the circumstances would have observed and appreciated them. These distinctions have been recognized and applied in numerous decisions of this court. Choctaw, O. & G. R. Co. v. McDade, 191 U. S. 64, 68, 48 L. Ed. 96, 100, 24 S. Ct. 24, 15 Am. Neg. Rep. 230; Schlemmer v. Buffalo, R. & P. R. Co., 220 U. S. 590, 596, 55 L. Ed. 596, 600, 31 S. Ct. 561; Texas & P. R. Co. v. Harvey, 228 U. S. 319, 321, 57 L. Ed. 852, 855, 33 S. Ct. 518; Gila Valley, G. & N. R. Co. v. Hall, 232 U. S. 94, 102, 58 L. Ed. 521, 524, 34 S. Ct. 229; and cases cited.

"When the employee does know of the defect, and appreciates the risk that is attributable to it, then if he continues in the employment without objection, or without obtaining from the employer or his representative an assurance that the defect will be remedied, the employee assumes the risk, even though it arise out of the master's breach of duty. If, however, there be a promise of reparation, then during such time as may be reasonably required for its performance, or until the particular time specified for its performance, the employee, relying upon the promise, does not assume the risk unless at least the danger be so imminent that no ordinarily prudent man under the circumstances would rely upon such promise. Hough v. Texas & P. R. Co., 100 U. S. 213, 224, 25 L. Ed. 612, 617; Southwestern Brewery & Ice

Co. v. Schmidt, 226 U. S. 162, 168, 57 L. Ed. 170, 173, 33 S. Ct. 68. This branch of the law of master and servant seems to be traceable to Holmes v. Clarke, 6 Hurlst. & N. 349, 30 L. J. Exch. N. S. 135, 7 Jur. N. S. 397, 3 L. T. N. S. 675, 9 Week. Rep. 419; Clarke v. Holmes, 7 Hurlst. & N. 937, 9 L. T. N. S. 178, 10 Week. Rep. 405."

■ At the risk of repetition, we may observe of this pleading that the employee was not required to exercise care to discover dangers not naturally and ordinarily incident to his employment, or to discover extraordinary dangers that may arise from negligence of the employer, or those for whose conduct the latter is responsible, in that the employee may reasonably assume that the employer and his agents about and in the discharge of that business have and will exercise the proper care with respect to the safety of such employee. Such may be his reliance until the knowledge of facts to the contrary are duly brought to his attention and notify him of the lack of such care and the danger of which he appreciates.

■ There was no error in sustaining demurrers to said pleas 3 to 12, inclusive. The specific grounds of demurrer pointed out and sustained were to the effect that the pleas alleged that said danger of which intestate assumed the risk, arose out of the negligence of defendant's officers, servants, agents, or employees, *and it is not averred that intestate had knowledge thereof, and understood said danger at said time, and thereafter he voluntarily incurred the risk arising out of said circumstances and danger*, and at the time of his injuries complained of; and for aught appearing from the allegations of said pleas, plaintiff's intestate's death was proximately caused by the negligence of the defendant's servants or agents in failing to keep a reasonable lookout after specific notice averred, for persons on said track while running trains against the course of traffic northward on said south-bound tracks. This is to say, that it was extraordinary danger that may so arise from the negligence of the employer, or those for whom the latter is responsible, and the employee may reasonably assume that the employer or his agents, on his or its said part or execution of his or its business, have duly exercised a proper care with respect to plaintiff's safety, until facts come to the knowledge of the latter that reasonably raise the inference of notice that such proper care and precaution had not been taken, and that the danger existed. The employee must be made aware of the danger, or the facts about him speak to him of the consequent danger by reason that it was so obvious that a person, ordinarily careful, in his situation would have observed the failure of duty in the premises, and appreciated the immediate, consequent danger. If this rule were otherwise, the federal statute de-

claring, in effect, that the employee may recover upon a showing that one of the co-operating causes of his injury was a negligent act or omission of a coemployee, would be inoperative. Federal Employers' Liability Act (45 USCA §§ 51–59); Louisville & N. R. Co. v. Porter, supra; Chesapeake & O. R. Co. v. De Atley, supra; Louisville & N. R. Co. v. Hall, ante, p. 338, 135 So. 466.

In Chesapeake & O. R. Co. v. Proffitt, 241 U. S. 468, 36 S. Ct. 620, 622, 60 L. Ed. 1102, 1106, Mr. Justice Pitney observed: "The employee is not obliged to exercise care to discover dangers not ordinarily incident to the employment, but which result from the employer's negligence. Texas & P. R. Co. v. Archibald, 170 U. S. 665, 671, 672, 42 L. Ed. 1188, 1191, 18 S. Ct. 777, 4 Am. Neg. Rep. 746; Choctaw, O. & G. R. Co. v. McDade, 191 U. S. 64, 68, 48 L. Ed. 96, 100, 24 S. Ct. 24, 25, 15 Am. Neg. Rep. 230; Texas & P. R. Co. v. Harvey, 228 U. S. 319, 321, 57 L. Ed. 852, 855, 33 S. Ct. 518; Gila Valley, G. & N. R. Co. v. Hall, 232 U. S. 94, 101, 58 L. Ed. 521, 524, 34 S. Ct. 229; Seaboard Air Line R. Co. v. Horton, 233 U. S. 492, 504, 58 L. Ed. 1062, 1070, L. R. A. 1915C, 1, 34 S. Ct. 635, Ann. Cas. 1915B, 475, 8 N. C. C. A. 834."

And in Chesapeake & O. R. Co. v. De Atley, 241 U. S. 310, 314, 36 S. Ct. 564, 565, 60 L. Ed. 1016, 1020, Mr. Justice Pitney again observed of the assumption of risk that plaintiff did not assume: "* * * Plaintiff having voluntarily entered into an employment that required him on proper occasion to board a moving train, he assumed the risk of injury normally incident to that operation, other than such as might arise from the failure of the locomotive engineer to operate the train with due care to maintain a moderate rate of speed in order to enable plaintiff to board it without undue peril to himself. *But plaintiff had the right to presume that the engineer would exercise reasonable care for his safety, and cannot be held to have assumed the risk attributable to the operation of the train at an unusually high and dangerous rate of speed, until made aware* of the danger, unless the speed and the consequent danger were so obvious that an ordinarily careful person in his situation would have observed the one and appreciated the other. Gila Valley, G. & N. R. Co. v. Hall, 232 U. S. 94, 101, 58 L. Ed. 521, 534, 34 S. Ct. 229; Seaboard Air Line R. Co. v. Horton, 233 U. S. 492, 504, 58 L. Ed. 1062, 1070, L. R. A. 1915C, 1, 34 S. Ct. 635, Ann. Cas. 1915B, 475, 8 N. C. C. A. 834." (Italics supplied.)

The decision in Seaboard Air Line Ry. Co. v. Hackney, 217 Ala. 382, 383, 115 So. 869, 870, was to the effect that: "Where section hand employed in interstate commerce within Federal Employers' Liability Act (45 US CA §§ 51–59; U. S. Comp. St. §§ 8657–8665) was ordered to unload ties weighing about 150 pounds each along right of way from moving flat car on which they were stacked crosswise in tiers five or six ties high, stacks being about 50 inches high, and employee was able-bodied man, 28 years of age, of average strength, intelligence, and experience, and had served as section hand before, and was not given training in unloading ties although he had never unloaded ties from train before, and employee was injured when ties from top tier fell while he was stooped over moving another tie, order directing employee to do such work held not negligent."

The difference of opinion which developed in the last cited case was on the question of negligence vel non of McMichael, the supervising foreman, to allow or create the condition, etc., causing injury, and not on Mr. Justice Brown's statement of the federal rule which follows: "The Federal Employers' Liability Act abrogates the common-law fellow servant rule, and places the negligence of a coemployee on the same basis as the negligence of the employer. Chesapeake & O. R. Co. v. De Atley, 241 U. S. 310, 36 S. Ct. 564, 60 L. Ed. 1016. And under the uniform authority, both state and federal, the employee does not assume risks arising from the negligence of servants, agents, or employees for whose negligence the employer is made liable by the Employers' Liability Act. Chesapeake & Ohio Ry. Co. v. De Atley, supra; L. & N. R. Co. v. Handley, 174 Ala. 593, 56 So. 539."

The distinction between assumption of risk and contributory negligence under the federal act is important; the latter is by way of reduction of damages, and the former is an absolute defense. 2 Roberts, Federal L. of Car. § 835, p. 1622. Counsel agree that in conformity with the decisions of the Supreme Court of the United States the defense of contributory negligence is provable under the general issue in actions under the Federal Employers' Liability Act (Louisville & N. R. Co. v. Wright, 202 Ala. 255, 80 So. 93; Southern Railway Co. v. Peters, 194 Ala. 94, 98, 69 So. 611), and this being competent evidence in mitigation of damages. Southern Ry. Co. v. Chestnutt, 210 Ala. 282, 97 So. 905; Burton & Sons Co. v. May, 212 Ala. 435, 103 So. 46; Mobile & Ohio R. Co. v. Williams, 219 Ala. 238, 121 So. 722; Louisville & N. R. Co. v. Fleming, 194 Ala. 51, 69 So. 125; Southern Railway Co. v. Peters, supra; Illinois Cent. R. Co. v. Skaggs, 240 U. S. 66, 36 S. Ct. 249, 60 L. Ed. 528. Appellant urges that plea 23 is that of the assumption of risk; it is its own interpreter under the decisions, and was provable under the general issue. It concludes as follows: "* * * and as a proximate consequence of and as a sole proximate result of his disobedience of the Rule of the defendant company, he was injured and killed." Under Southern

Railway Co. v. Peters, 194 Ala. 94, 98, 99, 69 So. 611, this was the equivalent of the general issue. Grand Trunk Western Railway Co. v. Lindsay, 233 U. S. 42, 34 S. Ct. 581, 58 L. Ed. 838, Ann. Cas. 1914C, 168. The violation of a rule of the employer is held to be contributory negligence, and not assumption of risk. Louisville & N. R. Co. v. Jacobson, 218 Ala. 386, 387 (6), 118 So. 565; Louisville & N. R. Co. v. Fleming, supra; Erie Ry. Co. v. Purucker, 244 U. S. 323, 325, 37 S. Ct. 629, 61 L. Ed. 1167; Penn. Co. v. Stalker, 67 Ind. App. 329, 119 N. E. 163, 168, and federal authorities; Davis v. Reynolds (C. C. A.) 280 F. 363, certiorari denied 258 U. S. 627, 42 S. Ct. 383, 66 L. Ed. 798; 1 Roberts, Fed. L. of Car. (1918) p. 1015, § 568; 2 Roberts, Fed. L. of Car. (2d Ed.) 1622. Hence the ruling of the court was without error, even if the plea (23) were properly drawn as that of contributory negligence.

■ The first amendment to said pleas is to the effect that "defendant avers that said north bound train on the south bound track on the date and at the time and place of intestate's injuries, was being run by the operatives thereof with due and reasonable care and caution, and with the care to be reasonably expected under the named conditions aforesaid." This merely introduced a conclusion of the pleader, and does not cure the defects indicated to said pleas. Dwight Mfg. Co. v. Holmes, 198 Ala. 590, 593, 594, 73 So. 933, and many authorities.

■ In respect to the general rule that trackmen are not entitled to ordinary and usual lookouts, warnings, and signals (39 C. J. 460), it is stated on authority that the same does not apply where there are special and extraordinary circumstances affecting the duty of the employer, as where the presence and peril of employees in and at a particular time or place should be anticipated by the employer or its agents. L. & N. R. Co. v. Williams, 199 Ala. 453, 456, 458, 74 So. 382; A. G. S. R. Co. v. Skotzy, 196 Ala. 25, 30, 71 So. 335; L. & N. R. Co. v. Thornton, 117 Ala. 274, 23 So. 778; Thompson on Neg. §§ 1839, 1840; 18 R. C. L. 616, § 12; 6 R. C. L. Perm. Supp. pp. 4487, 4488, § 112; Bennett v. Atchison, etc., R. Co. (Iowa) 174 N. W. 798; Ill. Cent. R. Co. v. Evans, 170 Ky. 536, 186 S. W. 173; L. & N. R. Co. v. Gamble, 156 Ky. 91, 160 S. W. 795; Nelson v. Northern, etc., 50 Mont. 516, 148 P. 388; Gulf, etc., v. Brooks, 63 Tex. Civ. App. 231, 132 S. W. 95; Pittsburg, etc., v. Bennett, 186 Ind. 672, 116 N. E. 582; Davis v. Sorrell, 213 Ala. 191, 104 So. 397.

In Louisville & Nashville R. Co. v. Asher's Adm'r, 178 Ky. 67, 198 S. W. 548, L. R. A. 1918B, 211, it was held the employer rendered itself liable for injuries to an employee when it ran a fast south-bound train on a north-bound track past where a crew of section men were removing dirt from the track on which south-bound trains habitually ran, which was not closed for this purpose, without notifying the men of the change in the course of its traffic, or in failing to notify the engineer to reduce the speed of his train and proceed with caution and control at this place. It will be noted that this was under special circumstances or exigencies of the track work.

■■ The second amendment to said pleas sought to charge intestate with knowledge that the engineer could not maintain an effective lookout at the particular time, place, and on that particular train, and that the fireman was, at the same time, otherwise engaged with his duties which prevented him from supplying a lookout. The demurrer points out that the pleas *do not deny knowledge on the part of the engineer and of the fireman of the immediate presence and peril of the intestate in time to have warned him off that track.* The averment that the engineer could not see the plaintiff's intestate because of the curve for a distance of 300 or 400 feet, is not the averment that they did not see intestate on the occasion in question. There was no error in sustaining demurrers to the pleas as amended in the second place.

In the third amendment to said pleas the defendant had the benefit under the defense of assumption of risk, when plaintiff took issue thereon. It was:

"Comes the defendant and after demurrer sustained to plea 3 to 12 inclusive as amended by 2nd amendment further amends each of said pleas as follows: by adding * * *

"1st Defendant avers that at the time of intestate's injury the approaching train was heard by him and he knew that a train was approaching from the south and that the danger of his being run into, over, or against by said train was open and obvious to him at and prior to the time of his injury, and was known to him at and prior to his injury."

It is thus apparent that the material allegations in this amendment are such as are required of a plea of assumption of risk after the master has exercised reasonable care. Erie Railroad Co. v. Purucker, 244 U. S. 320, 37 S. Ct. 629, 61 L. Ed. 1167, 1168; Chesapeake & O. R. Co. v. De Atley, supra; Southern Pacific R. Co. v. Berkshire, 254 U. S. 415, 41 S. Ct. 162, 65 L. Ed. 335; Chesapeake & O. R. Co. v. Proffitt, supra; Louisville & N. R. Co. v. Porter, 205 Ala. 131, 135, 87 So. 288; Louisville & N. R. Co. v. Wright, 202 Ala. 255, 80 So. 93; Southern Railway Co. v. Chestnutt, 210 Ala. 282, 284, 97 So. 905; S. A. L. Ry. Co. v. Johnson, 217 Ala. 251, 254, 115 So. 168; Southern Railway Co. v. Fisher, 199 Ala. 377, 380, 74 So. 580; Louisville & Nashville R. Co. v. Fleming, supra; Brown, Adm'r, v. Louisville & N. R. Co., 111 Ala. 275, 19 So. 1001;

1 Labatt, § 259, note; Ib. § 261; 3 Labatt, § 1207.

The pertinent question here was covered in Louisville & N. R. Co. v. Porter, 205 Ala. 131, 135, 87 So. 288, 291, as follows:

"The distinction between assumption of risk and contributory negligence is made in Seaboard Air Line v. Horton, 233 U. S. 492, 34 S. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475; Yazoo & M. V. v. Wright, 235 U. S. 376, 35 S. Ct. 130, 59 L. Ed. 277.

"The foregoing doctrine of assumption of risk is sustained by the Supreme Court of the United States in Chesapeake & Ohio v. De Atley, 241 U. S. 310, 316, 36 S. Ct. 564, 566, 60 L. Ed. 1016, where Mr. Justice Pitney observed of 'an instruction upon the question of assumption of risk, dealing solely with the ordinary hazards of the employment, and not pointing out that a different rule must be applied with respect to an extraordinary risk attributable to the engineer's negligence,' that it would probably have confused and misled the jury. Again in Chesapeake & Ohio v. Proffitt, 241 U. S. 462, 468, 469, 36 S. Ct. 620, 622, 60 L. Ed. 1102, it was said:

" 'Negligence in the doing of the work was the gravamen of plaintiff's complaint, in his declaration as in his evidence, and defendant was not entitled to an instruction making the pursuit of a customary system decisive of the issue, without regard to whether due care was exercised in doing the work itself. Even if plaintiff knew and assumed the risks of an inherently dangerous method of doing the work, he did not assume the increased risk attributable, not to the method, but to negligence in pursuing it.'

"That is to say, the employee 'assumes the risk normally incident' to his employment, not such a risk as may arise from the failure of some other employee to use due care so as to enable his coemployee to discharge the duties of his employment without undue peril."

It follows that there was no prejudicial ruling or error to reverse in sustaining the demurrers to the pleas as originally filed, and under the first and second amendments thereto. Issue was taken after the third amendment to the pleas.

The portion of the oral charge to which exception was taken, and the subject of the fifty-eighth assignment of error, was withdrawn, and the jury was cautioned not to consider it for the reason that he did not intend to charge upon the effect of the evidence, that the jury are the judges thereof.

The sixtieth assignment of error is not responsive to the exception reserved; that is, the record shows no exception to what the court did say. The word "no" is not found in the oral charge in the connection stated. The general announcement of one of plaintiff's theories is merely stated by the court, and when the whole charge is considered there was no error. The court was stating a "theory" of operating a train "against the traffic"; of movement very carefully limited to the "conditions then existing." Thus was submitted the jury question of duty in the premises—whether or not it was negligence in so running the train on schedule on the opposite track without lookout or signals of the approaching train, *after being specifically warned of the presence* of plaintiff's intestate upon the track and in front of the rapidly approaching train. The authorities support this as a jury question and for decision under the circumstances of each case.

The use of the words by the court, *"was unknown* to him at the time of the accident, unless that act was one that was incident to his contract of employment," is free from error. It was but the saying, "not known to him" actually, nor was the knowledge imputed to him. "There is no assumption of risk where there is no knowledge of risk," is the broad term used in Southern Railway Co. v. Chestnutt, 210 Ala. 282, 284, 97 So. 905, 907, where authorities are cited. See, also, 39 C. J. p. 737, § 940; 3 Labatt, p. 3662; Brown, Adm'r, v. L. & N. R. Co., 111 Ala. 275, 19 So. 1001; Southern Pac. Ry. Co. v. Berkshire, 254 U. S. 415, 41 S. Ct. 162, 65 L. Ed. 335, 337. And given charges 33, 37, and 48 clearly expressed the defendant's rights under his pleas of assumption of risk. The court's instruction, "and an appreciation at the time of the danger involved therein," is in accord with the federal and our decisions to the effect that knowledge and appreciation of danger are indispensable to a servant's assumption of risk of injury. 20 R. C. L. p. 109, § 95; Mackintosh Co. v. Wells, 218 Ala. 260, 263, 118 So. 276; McGeever v. O'Byrne, 203 Ala. 266, 269, 82 So. 508; Chesapeake & O. R. Co. v. De Atley, 241 U. S. 314, 36 S. Ct. 564, 60 L. Ed. 1016, 1020. On assumption of risk, so, also, is the instruction of the court that if he appreciated the danger, knew the surrounding conditions and circumstances, and with such knowledge and appreciation put himself in the way of danger, when considered in its context, in accord with the decisions, and is without error. See authorities last cited in Marbury Lumber Co. v. Jones, 206 Ala. 669, 671, 91 So. 623, 23 A. L. R. 309; King v. Woodward Iron Co., 177 Ala. 501, 59 So. 264.

The seventieth assignment of error shows that the exception taken to the oral charge included a portion of the court's charge which was free from objection, and hence will not be considered on authority of Postal Telegraph Cable Co. v. Hulsey, 132 Ala. 444, 461, 31 So. 527; Hawkins v. Hudson, 45 Ala. 482; Louisville & N. R. Co. v. Hurt, 101 Ala. 36, 13 So. 130; Bonner v. State, 107 Ala. 97, 18 So. 226.

There was no error in instructing the jury of the several elements that enter into the amount of damages sustained. In its context there was no instruction for double or cumulative items of damages. If there was any part of the charge that could have been explained, it should have been cleared by an explanatory charge. And no reversible error intervened under the exceptions as reserved.

 There was no reversible error in instructing the jury as to diminution of damages by the element of contributory negligence, if shown. The instruction read: "The defendant's accountability for damages, or apportionment of damages in your consideration, would be the proportion which the defendant's negligence bears to the total sum that you have arrived at as being the proper amount of the whole damage. I will repeat, that the amount of damages to be found against the defendant, if you find any should be found, is in proportion that his negligence bears to the whole amount of damages,—I mean to say negligence."

See Norfolk v. Earnest, 229 U. S. 114, 33 S. Ct. 654, 57 L. Ed. 1096, Ann. Cas. 1914C, 172; Southern Ry. Co. v. Peters, 194 Ala. 98, 69 So. 611; Grand Trunk R. Co. v. Lindsay, 233 U. S. 42, 34 S. Ct. 581, 58 L. Ed. 838, Ann. Cas. 1914C, 168.

. The reservation of exception in assignments of error 72 and 75 was not specific as required, and not within the rules. Postal Tel. Cable Co. v. Hulsey, supra; Ex parte Cowart, 201 Ala. 55, 56, 77 So. 349.

 The general affirmative instruction requested by and denied to defendant to count 1 was without reversible error. The assignment of errors and argument for appellant present the simple question: Does plaintiff make out for the jury a cause of action against the defendant under the federal rules that govern as to substantive rights of the parties? Illinois Cent. R. Co. v. Johnston, 205 Ala. 1, 87 So. 866; L. & N. R. Co. v. Hall, supra; American Express Co. v. Henderson, 214 Ala. 268, 271, 107 So. 746. There were material tendencies of the evidence as to the relations of the parties and respective duties of causal or of combined causal negligence that were properly submitted to the jury. Norfolk & W. R. Co. v. Earnest, 229 U. S. 114, 120, 33 S. Ct. 654, 57 L. Ed. 1096, Ann. Cas. 1914C, 172.

We will examine the evidence, not under the scintilla rule, but as to the substantive rights of the parties. The evidence was undisputed as to the relationship of master and servant existing between intestate and defendant at the time of the infliction of the injuries proximately causing his death; was without dispute that intestate was engaged in the active performance of the duties of his employment, in and about repairing the south-bound track of the defendant's main line tracks, between Birmingham, Ala., and Nashville, Tenn., at the time of the infliction of said injuries; that the train which killed intestate was an extra north-bound train traveling on the south-bound track, and running on the same schedule as a north-bound train then due on said north-bound track; that intestate, at the time said train was approaching the point of collision, was under the impression said train was said north-bound train, and was approaching on said north-bound track, and had no specific knowledge to the contrary; that no immediate signal was given intestate by said approaching train. The evidence was without dispute that the engineer on said train was warned of the presence of deceased, or that of a human being, upon the track in front of him; that intestate was on said track on which said train was approaching, in the discharge of his duties in tightening the bolts of the rail joints on said track, in full view of the side of the engine on the fireman's side of said train, for a distance of twelve telephone posts (or, as fixed by the evidence, approximately one-half of a mile), while intestate was on said track in a stooping position, in the act of tightening one of said bolts at the moment the train struck him. It is argued, with reason, that if the fireman was on the lookout he must have seen intestate on the track in front of him; knew that he was so engaged and engrossed in his work that he was oblivious of or prevented from noticing any approach of any train *on the track on which he was at work and from the direction from which said train was approaching.* If the fireman was on the lookout, he was guilty of negligence, under the special circumstances of this case, in not warning intestate of his danger; if he was not on the lookout, but was firing the engine, during said entire time, then the north-bound train was running blindly on the south-bound track, on the same schedule as a north-bound train on the north-bound track, without any signals of approach, and with the warning that there was danger ahead in the presence of a human being upon that track. To so run a train, under such circumstances, presented a question for the jury (it has been held to be evidence of negligence), whether the train, so run, was not run with due care, reasonably to be expected under the unusual conditions then and there existing. Southern Railway Co. v. McGuin (C. C. A.) 240 F. 649, 652 (Woods, C. J.); certiorari denied, 244 U. S. 654, 37 S. Ct. 652, 61 L. Ed. 1373; Southern Railway Co. v. Cook (C. C. A.) 226 F. 1, 3, 7; Id., 245 U. S. 677, 38 S. Ct. 62, 62 L. Ed. 543; Fitzgerald v. Erie Railroad Co., 158 App. Div. 801, 144 N. Y. S. 237, 239; Hines v. Sweeney, 28 Wyo. 57, 201 P. 165, 1018 (engineer warned of the presence of a person on the track); Illinois Central R. Co. v. Evans, 170 Ky. 536, 186 S. W. 173 (notice of person on the track);

Brightwell v. Lusk, 194 Mo. App. 643, 189 S. W. 413; Lake Shore & M. S. Ry. Co. v. Murphy, 50 Ohio St. 135, 33 N. E. 403; Louisville & N. R. R. Co. v. Eversole, 178 Ky. 67, 198 S. W. 548, L. R. A. 1918B, 214; Engel v. Chicago, B. & Q. R. Co., 111 Neb. 21, 195 N. W. 523, 528; Brown v. Chicago, B. & Q. R. Co., 117 Minn. 149, 134 N. W. 315, 316; Schulz v. Chi., M. & St. P. Ry. Co., 57 Minn. 271, 59 N. W. 192–193; Pennsylvania Company v. Stalker, 67 Ind. App. 329, 119 N. E. 163; St. Louis v. Jackson, 78 Ark. 100, 93 S. W. 746, 6 L. R. A. (N. S.) 646, 8 Ann. Cas. page 330, and notes; Smith v. Southern Pacific Co., 58 Or. 22, 113 P. 41, Ann. Cas. 1913A, 437–440, 445–447; Grow v. Oregon Short Line, 44 Utah, 160, 138 P. 398, Ann. Cas. 1915B, 485 (assumption of risk). See general statement in text-books, 39 C. J. 460, notes 16, 17 and 18; 2 Thompson on Neg. §§ 1756, 1839; 1 Labatt, § 350; 6 R. C. L. Perm Supp. pp. 4487, 4488; L. R. A. 1916F, 555–560, 564–566. And our authorities bearing analogy to the question of special circumstances are: Louisville & N. R. Co. v. Williams, Adm'r, 199 Ala. 453, 456, 458, 74 So. 382, an action for the death of a railroad employee while on the track on a railroad bridge in the performance of his duties; A. G. S. R. Co. v. Skotzy, 196 Ala. 25, 71 So. 335, where a fireman stood on an adjacent track in order to work, and another crew switched some cars with no one controlling them, which ran over plaintiff and injured him; Louisville & N. R. Co. v. Thornton, 117 Ala. 274, 281, 282, 23 So. 778, where an employee sustained injuries in attempting to couple cars in the discharge of his duties; L. & N. R. R. Co. v. Morris, 179 Ala. 239, 241, 248, 60 So. 933, an action for the death of an employee, who, while at work on one of defendant's tracks, was struck by a locomotive and killed after previous alarm had been given by third parties; Davis v. Sorrell, 213 Ala. 191, 104 So. 397.

The undisputed evidence showed deceased was continuously in plain view of the fireman, or that side of the engine, from the time the engine got within a half of a mile of deceased up to and including the time he was stricken by the locomotive; and there was undisputed evidence that the engineer had the usual and timely information of peril ahead. If so, for a reasonable time and distance, thereafter, it became the duty of such employees to maintain a lookout and give danger signals. The defendant argues without evidence to support this, that if the fireman at the time was firing his engine, such fact would relieve him of all negligence in respect to the duty to maintain a lookout and warn deceased. However, there was no such evidence to support that pleading or argument. And had there been such evidence, what of the conflicting duties in the premises of firing and looking around the curve after notice had been given of the peril ahead? It has been declared that as between the duty of firing an engine and looking out for the safety of people to whom he is under the specific duty to look out for, whether passengers, laborers, or travelers upon highway crossings, or licensees, he must give preference to that duty which conserves human life and safety. Such are the authorities: L. & N. R. Co. v. Gilmore, Adm'r, 131 Ky. 132, 109 S. W. 321, 21 L. R. A. (N. S.) 723 (on rehearing); Gunn v. Ohio River Co., 42 W. Va. 676, 26 S. E. 546, 36 L. R. A. 575. And, if by reason of their duties, either the fireman or the engineer, or both, are hindered, that a proper lookout cannot be kept, this does not as a matter of law relieve the master of the duty of a lookout under special circumstances, and for a reasonable time, distance, and place. And under the special circumstances shown by the evidence the duty of due care vel non was for the jury. The evidence for plaintiff was positive and undisputed as to notice given of intestate's peril; that it was acknowledged and understood by the engineer. The evidence for defendant was silent as to whether or not the engineer received and understood the specific warning of danger ahead, and silent as to what the engineer and fireman were doing and the condition and needs of the engine, from the time of warning to the point of collision. Central of Ga. R. Co. v. Graham, 218 Ala. 624, 626, 627, 119 So. 654; A. G. S. R. R. Co. v. Skotzy, supra; L. & N. R. Co. v. Thornton, supra; 2 Thompson on Neg. 537, § 1839, quoted and cited with approval in L. & N. R. Co. v. Williams, 199 Ala. 456, 74 So. 382; Alabama T. & N. R. Co. v. Huggins, 205 Ala. 80, 82, 87 So. 546; Labatt on Master & Servant, § 332.

The special circumstances taking the case from the general rule—that trackmen were not entitled to the usual lookout, warnings, and signals (39 C. J. 460)—were: (1) That intestate was engaged at the moment in fastening a fishplate (this is clearly shown by the evidence of Mrs. Alvis, wife of the section workman); (2) that appellant's employee in charge of the engine had been warned of the immediate presence of intestate on the track, and this notice was not denied by defendant, and was established by evidence of Virgil and Eddie Alvis); (3) that the train was a north-bound special train containing strawberry cars, that had been diverted by order of the train dispatcher, and was at that time proceeding along a south-bound main line track on the same schedule as if a north-bound train on such north-bound track, due at such time, and reasonably expected to be and usually proceeded on the other parallel track only a few feet apart.

The division order is given as follows by the train dispatcher:

" 'Order No. 44; No. 72 engine 1559 has right over opposing trains on south bound track to Cullman.'

"This original order was made by me and written by me while in the discharge of my duties. Train No. 72 was moved over the south bound track in transit to Cullman, Alabama, against opposing trains from Trafford to Cullman. Trafford is a point south of Cullman. I have been a dispatcher 23 years. As a dispatcher it is my duty to know which direction trains are running in, where the trains are, and their numbers at all times over my division. I keep in touch with them and their numbers, and as they pass every station on my division, and the big sheets that I have here show where every train is during the time I am on duty as they pass each station. With this information I had the right to route them over either track, and I had been doing this since it has been a double track. *There was a necessity and reason for routing train No. 72 over this track on this occasion. The train was a special consisting of strawberry cars, and No. 98, the Pan American, and No. 6 were to come over the north bound track and train No. 98 was delayed some, so I just diverted 72 on the south bound track;* that is done *quite often in those cases, and has been in the course* of my connection as dispatcher, since there has been a double track." (Italics supplied.)

In response to a question by the court, the witness testified that but for the particular order that train would or should have been on the north-bound track.

We will again advert to the evidence in connection with given and refused charges.

It results from the foregoing established facts, that stand out by undisputed and preponderating evidence, that jury questions of the respective duties, and the extent and result of the failure thereof, were properly submitted to the triers of fact to determine if there was causal or combined causal negligence proximately resulting in the injury and which warranted and sustained a verdict under the federal rule. Illinois Cent. R. Co. v. Johnston, 205 Ala. 1, 87 So. 866; L. & N. R. Co. v. Hall, supra.

 There are several* assignments of error that challenge rulings on evidence. There was no reversible error in allowing the question to the witness Alvis, "What was intestate doing at that time," that is, from ten or fifteen minutes before the time of the injury, engaged in his work upon the track or traveling with his tools along that track? The witness was properly allowed to state that shortly after he saw intestate on the track, he gave the engineer on the approaching train "that signal," and to explain what signal was made and its meaning, to the effect that: "It was a signal that I have, I made a signal at the engineer that a track-walker—that there was something ahead of him. I say I made a signal at the engineer that the trackwalker—that somebody was ahead of him. * * * I made a signal that way (indicating) and pointed ahead—pointed north, the way the trackwalker went." In this action there was no error. The witness was shown to be competent and experienced in such matters and business. And on cross-examination the witness was asked and answered, as follows: "What did you say you did, what motion did you make, let us see what kind of motion you made there, but there wasn't any ditch? I made a motion like this, indicating. I put the palms of my hands about 4 or 6 inches apart, something like that, and pointed ahead. Then when the train was about half past me a caution signal was given. It had not reached the curve at that time." He could have also expressed the opinion in shorthand rendition of fact that he thought its meaning was that "there was something close ahead of the train," Jones v. Keith (Ala. Sup.) 134 So. 630; [2] Ala. Great Southern Ry. Co. v. Linn, 103 Ala. 134, 15 So. 508; Burton & Sons Co. v. May, 212 Ala. 435, 103 So. 46; Choate v. Southern Ry. Co., 119 Ala. 611, 24 So. 373; Alabama Great Southern Ry. Co. v. Burgess, 119 Ala. 555, 25 So. 251, 72 Am. St. Rep. 943; Reaves v. Maybank, 193 Ala. 614, 69 So. 137; he had qualified as an expert.

 It was also without error for the witness in question, and his brother, to say that his warning was acknowledged by the engineer by the giving of the usual signal among such servants or agents; on this occasion he "nodded his head," blew the whistle, "threw up both of his hands and pointed ahead," or "made a signal of some kind." It was likewise competent, relevant, and material under the issues of fact presented, to show whether this was a north or south bound track and the answer that it was a north-bound train. Southern Ry. Co. v. McGuin, supra.

 An objection and several exceptions are reserved to witness stating, on cross-examination, his conclusions of conscious pain vel non. The witness was asked, and answered. This was sufficient. Louisville & N. R. Co. v. Porter, supra. And there was no reversible error as to these rulings, though witness was not an expert; he could not have otherwise stated the fact.

 The earning capacity of deceased and his contributions therefrom to beneficiaries were a proper subject of inquiry before the jury. A. G. S. R. Co. v. Cornett, 214 Ala. 23, 29, 106 So. 242; L. & N. R. Co. v. Porter, supra.

 The father-in-law as a witness had been asked, and answered without objection,

---

[2] Ante, p. 27.

that he knew of no dispute between intestate and his wife; never heard of any differences between them to "amount to anything"; that "Mrs. Parker did not state in conversation with the man who testified just a while ago that her husband was going to kill himself that morning. I was present the night of Mr. Parker's death at the home of my daughter. I did not hear my daughter tell anybody at that time that he kissed his babies and told his babies that morning that they would never see him again, that he was going to kill himself." He then answered, over the objection and exception of defendant, that he was "very loving and kind to his family." The defendant moved to exclude the word "loving," which motion was overruled and exception was reserved by defendant. While the question was made to apply to intestate's relation to the wife, yet the answer was broad enough to extend to his relation "to his family"; it was for rebuttal, not augmentation of damages.

 The measure of damages under the federal act is commented upon by Mr. Justice Lurton in Michigan Cent. R. Co. v. Vreeland, 227 U. S. 59, 33 S. Ct. 192, 57 L. Ed. 417, 423, Ann. Cas. 1914C, 176. There was no error in showing the widow's loss of the help and service in and during the exercise of society and companionship with the husband. And the answer was competent and legal under the issues presented. No objection was made that the answer extended to the family, while the question was limited to his relation as a husband. Sovereign Camp, W. O. W., v. Hoomes, 219 Ala. 560, 563, 122 So. 686. The widow had theretofore testified without objection, and after stating what he made and spent on his family, that: "He seemed like he was always *kind to his children, a good father and a good husband.* I saw him after he was hit and while he was still living; he was still conscious. He seemed to be in great pain. He seemed like he was suffering awful when I got to him." (Italics supplied.) The latter statement of facts was competent. Sovereign Camp, W. O. W., v. Hoomes, supra. And the expressions, "good husband," "good father," "kind to his children," and "loving and kind to his family," were mere shorthand renditions of fact within the rule; were competent to rebut a tendency of defendant's evidence that the husband and wife did not entertain cordial relations at the time and on the morning in question, and that he contemplated suicide; that he kissed the children and said to the son that this is the last time "Papa will kiss you." If the evidence had been irrelevant to the issues, this tendency of defendant's evidence made the relation as husband and father material. Gibson v. Gaines, 198 Ala. 583, 73 So. 929.

We advert to refused charges to say that the question presented under the pleading and

proof was for the jury. In the case of Butler v. Frazee, 211 U. S. 459, 29 S. Ct. 136, 138, 53 L. Ed. 281, it was said: "Where the elements and combination out of which the danger arises are visible it cannot always be said that the danger itself is so apparent that the employee must be held, as matter of law, to understand, appreciate, and assume the risk of it. Texas & P. R. Co. v. Swearingen, 196 U. S. 51, 49 L. Ed. 382, 25 S. Ct. 164; Fitzgerald v. Connecticut River Paper Co., 155 Mass. 155, 31 Am. St. Rep. 537, 29 N. E. 464. *The visible conditions may have been of recent origin, and the danger arising from them may have been obscure. In such cases, and perhaps others that could be stated, the question of the assumption of the risk is plainly for the jury.* But where the conditions are constant and of long standing, and the danger is one that is suggested by the common knowledge which all possess, and both the conditions and the dangers are obvious to the common understanding, and the employee is of full age, intelligence, and adequate experience, and all these elements of the problem appear without contradiction, from the plaintiff's own evidence, the question becomes one of law for the decision of the court. Upon such a state of the evidence a verdict for the plaintiff cannot be sustained, and it is the duty of the judge presiding at the trial to instruct the jury accordingly. Patton v. Texas & P. R. Co., 179 U. S. 658, 45 L. Ed. 361, 21 S. Ct. 275, and cases there cited. The case at bar falls within this class."

We may say here that defendant did not contradict, or attempt by its engineer or fireman in charge of the special train of cars in question to contradict, the warning or signal of immediate peril on the track ahead, given, about a mile from the point of collision, by defendant's then section workman, Virgil Alvis. That this notice was given and received by the engineer is likewise corroborated by Eddia A. Alvis.

Mrs. Alvis' testimony shows plaintiff's intestate was killed in the discharge of his duties as trackwalker and that he had tightened the fishplates to and at the point of his injury, and not beyond that point. The train dispatcher issued order, diverting this special train consisting of strawberry cars from the north to the south bound track, which is set out above.

The next witness for defendant was the section foreman (D. A. Alvis), who testified of intestate's duties on that date, that, among other things, it was his duty to look out for trains that passed, and witness had so instructed him and likewise charged him with the observance of the book of safety rules which witness gave him. This book of rules specified the right of running trains in either direction without notice on either track. This witness further stated that trains pulling grade vibrated the track for

a distance when run on either track; and fixed by another witness as from one to two hundred feet.

The track supervisor (Higgins), as a witness for defendant, testified that he had spoken with plaintiff's intestate of the duty of care to be exercised by a trackwalker, and particularly cautioned him of the danger of trains that are or might be diverted against the course of traffic, and that vibrations thereof can be felt at a distance of from 100 to 200 feet.

The witnesses Lipert, Trammell, Stewart, and Sammy Parker gave evidence tending to show Parker did not expect to see the baby again, and that he was crying when he left home that morning; that he had been ill and not getting on well with his wife. And the photograph identified was introduced in evidence.

There was no denial by defendant of the giving and receipt of the danger signal of a human being on the track about a mile from the point of injury to plaintiff's intestate.

We have indicated that the fact and sufficiency of the notice of peril or danger of a human being on the track ahead of said train, given by Virgil Alvis to the engineer, was not contradicted; nor were there tendencies of evidence that such notice was not given and received by the engineer. There was no evidence or tendency thereof, to show what the engineer and fireman were doing after the notice of peril was given and received by the engineer, and the danger signal then sounded by the latter; there was no tendency of the evidence of the extent or obstruction of the engine as affecting the engineer or fireman in keeping a lookout as it rounded the curve, shown by the photograph, to the point of contact; there was no evidence that a lookout was maintained or signals given, other than that given a mile away when Alvis signalled the engineer.

The deceased, when he heard the train blow, stated to Mrs. Alvis that he would go for the expressed reason that he wanted to get across the track before the approaching train blocked him, or ran between him and the south-bound main line track. This shows, or strongly tends to show, that the deceased was *expecting a regular train from the south on the north-bound track*, and not a special or extra train going north on the south-bound track. It is further deducible from the evidence and the division order, that the track ahead of this engineer and train in question (the regular track ahead) was obstructed and as a precautionary measure said train was diverted to avoid collision. It is further undisputed, as we have indicated, that the same engineer had specific or usual warning that some human being was in front of him on the track

to which that train was diverted and along which it proceeded north. The physical facts where deceased was stricken showed proper and continuous tightening of a number of plates and bolts along the rails to the point where intestate was injured, and not beyond. The evidence showed no warning signals were given of the immediate approach of the train, and that only a danger signal was given, when Alvis signalled said engineer in charge of the north-bound special engine or train of the danger ahead, and that this was a mile from the place of injury of plaintiff's intestate.

The violation of the rule of the company, in the judgment of all of the Justices, presented a question of contributory negligence, and not that of an assumption of risk. That the instant case was properly submitted to the jury under the weight of the evidence, and that no reversible error was committed in refusing the general affirmative instructions requested by the defendant, is the judgment and concurrences of ANDERSON, C. J., GARDNER, BOULDIN, and FOSTER, JJ. That there should be no recovery for that the general affirmative instructions requested in writing should have been for defendant, and that no recovery should be had under the evidence, is the judgment of SAYRE and BROWN, JJ.

Refused charges 40 and 52 sought to instruct as to the effect of the negligence of deceased, and were justified in their refusal for making contributory negligence of deceased, without so hypothesizing, that it *proximately contributed to his* injury and death. Charge 40 was further justified in its refusal for leaving to the jury a misleading tendency in the definition of the word "negligence." Brilliant Coal Co. v. Barton, 203 Ala. 38, 40, 81 So. 828; Alabama Consolidated C. & I. Co. v. Heald, Adm'r, 168 Ala. 626, 648, 53 So. 162; and many authorities; Hammett v. Birmingham Ry., Light & Power Co., 202 Ala. 520, 522 (8), 81 So. 22. The jury was not concerned with contributory negligence not hypothesized to have proximately contributed to the injury and death. Southern Ry. Co. v. Peters, 194 Ala. 94, 98, 69 So. 611; Norfolk, etc., Co. v. Earnest, 229 U. S. 114, 120, 33 S. Ct. 654, 57 L. Ed. 1096, Ann. Cas. 1914C, 172. Refused charges 40 and 52, when considered with instructions given, were refused without error. Moreover, these charges were confusing in not stating the effect on recovery of contributory negligence as proximately contributing to the injury—this, a suit under the federal statute. These charges were:

"40. I charge you, gentlemen of the jury, if you believe the evidence, in this cause, Samuel D. Parker was guilty of negligence in violating the following safety rule of the defendant company, to-wit: * * * 'On double track trackmen are required to step off of

both tracks when trains are passing but in clearing approaching trains do not cross over or stand upon the other track. This applies to straight as well as curved track.'"

"52. I charge you, gentlemen of the jury, that plaintiff's intestate was guilty of contributory negligence."

There was no evidence that testator's intestate stood upon the track.

In a suit like this under the federal statutes having application (45 USCA §§ 51–59), and the special facts as to notice of human proximity on the track immediately preceding the injury, neither side was an absolute insurer of the trackwalker's safety. Pertinent to this, it will be observed that the court had instructed in the oral charge as follows: "This contract of employer and employee imposes certain duties upon each of the parties. So far as is applicable to this case, this relation imposes upon the master, or employer, the legal duty not to negligently injure or kill the employee; and the duty rests on the employee to use all reasonable means consistent with a due and proper performance of his duties to protect his own life or himself from injury." · That under the federal statute "there can be no recovery unless it is satisfactorily shown by the evidence to the jury that the defendant, by its agents, servants, employees or officers, was guilty of negligence in the matter of bringing about the death of the party, and that this negligence was the proximate cause of the injury." And actionable negligence was defined, saying: " 'First, that there is a legal duty or obligation which in this case the defendant is under duty to protect the plaintiff's intestate from injury or death;' and, second, that there was a negligent failure to discharge such duty; and, third, that any injury—that he was injured from such acts, and the same resulted— and that injury resulted proximately therefrom. There must be a causal connection between the negligence complained of, that is to say the acts complained of, and the injury suffered—that is, the injury must have resulted as a direct consequence of the breach of duty owing the deceased in this case, if it did owe him any." The legal effect of "care," "due care," and "diligence" is illustrated, and the same concluded by the instruction that "the party charged with the duty is required to exercise that degree of caution and diligence which a prudent and careful man, similarly situated and circumstanced, would have exercised." Proceeding with the oral charge, the jury were instructed as follows:

" * * * The deceased assumed the risk, if you find that the evidence shows there was such a risk, of the necessity that trains occasionally or frequently run North on the South bound track or that they so ran without necessity therefor, but this risk so assumed was subject to the limitation and explanation that such trains so run should be run with due or reasonable care, and such care reasonably to be expected under such conditions then and there existing. * * * The deceased did not assume lack of care that would have been used by a reasonable, prudent, careful man so operating said trains.

"There is something said here about keeping a lookout. Now, as an ordinary proposition of law and as a general rule, the master is not required to keep a lookout for men— for employees, whose duty it is to be upon and along the tracks in the discharge of their duty. Ordinarily the engineer operating trains, or operating this train, had a right to assume, and may assume, and might have assumed that the section man would be on the lookout and protect himself against a train run in the usual way, but this does not exempt an engineer from the duty of keeping lookouts, or when I say engineer—those operating the train, to keep a lookout for trackmen who may be caught in discharge of their duty unawares, nor would it excuse those so operating a train necessarily from giving signals such as an ordinary prudent, careful man would have given under like conditions and circumstances. Under ordinary circumstances and conditions, failure to give signals, standing alone, would not constitute negligence towards workmen on tracks, but when taken with the failure to keep a lookout, might under certain conditions constitute negligence. That is for you to determine.

"In this case the deceased may have been guilty of contributory negligence, or could have been in failing to keep a lookout for his own safety of approaching trains, but such negligence would not excuse the negligence of those operating the trains, if they were negligent under conditions and circumstances and at a place and time when a reasonable, prudent, careful man would not have acted that way. * * *

"The defendant in this case has offered a certain rule that was read to you, * * * which rule I have or do declare to you as being a reasonable rule, on which the Company had a right to enact, to adopt. It is for you to determine what effect, or what place, or the probative force that rule should have in the determination of what your verdict should be in this case.

"The railroad company could not pass a rule that per se exempts them from liability for their own negligence or the negligence of their employees while acting within the scope and line of their employment.

"The defendant has also introduced other evidence here with reference to the location of the tracks—with reference to the grade— with reference to the curve—with reference to the vibration that might be made by that train or similar trains so run at that place or

similar places; and they have also introduced evidence which, if believed by you, would tend to call in question the truthfulness or correctness of the statements of certain of the plaintiff's witnesses in this case. Those are matters falling peculiarly within your province. * * * Now it is for you to say whether or not there has been any evidence introduced showing or tending to show that the deceased, Mr. Parker, was guilty of contributory negligence. Probably you ought to know what contributory negligence is. As a prerequisite for contributory negligence there must be negligence on the part of the defendant in this case no such thing as being contributory showing or negligence when there is no negligence, because the very term indicates that it contributes to other negligence. In contributory negligence the essentials are that the party against whom the plea is interposed, that is, the deceased in this case, not only had knowledge of the condition of danger, but he appreciated the danger under the surrounding circumstances and conditions; and with that knowledge or its equivalent, and that appreciation had, did not exercise reasonable care in the premises, but with such knowledge and appreciation put himself into the way of danger. * * *

"Now, it is for you to consider all the evidence and determine whether or not the deceased was guilty in any measure of contributory negligence, that is, negligence that I have defined to you, that proximately contributed to the injury.

"Now the fact, if you find it to be a fact, that he was guilty of contributory negligence, that within itself would not constitute a bar to this action, but it would be and must be considered by you in arriving at the amount of damages you shall render, provided you reach the conclusion that you find or should find for the plaintiff."

When, however, the whole of the oral charge is considered together, there was no error to reverse in the instruction given and to which exceptions were reserved.

The rule of the company referred to by the court was to the effect that on double tracks, straight as well as curved, trackmen are required to step off both tracks when trains are passing, but in clearing approaching trains that such employees do not cross over or stand upon the other track.

■■■ The court instructed, at defendant's request, as follows:

"33. I charge you, gentlemen of the jury, that Samuel D. Parker, assumed extraordinary risk incident to his employment, or risks caused by the defendant's negligence, which were obvious or fully known and appreciated by him. * * *

"37. I charge you, gentlemen of the jury, that under the law of this case, Samuel D.

Parker, assumed the ordinary risk of his employment, and when obvious or fully known and appreciated by him, the extraordinary risks, and those due to negligence of his employer and fellow employees. * * *

"39. If you believe from the evidence that Samuel D. Parker was guilty of negligence in not maintaining a lookout, or watch for the train which struck him, and that his negligence was the sole, only and proximate cause of his injury and death, then you cannot return a verdict for the plaintiff. * * *

"46. I charge you, that those in charge of defendant's engine had a right to act on the belief that plaintiff's intestate would take reasonable precaution against the approach of said train. * * *

"48. I charge you, gentlemen of the jury, that the track walker employed to walk over and watch tracks and move obstructions, while there is frequently passing of trains on and over said track, assumes the risk of injury by being struck by trains properly operated, and the track walker must adopt for his protection, reasonable safeguards against injury. * * *

"49. I charge you, gentlemen of the jury, that the operatives of said engine had the right to presume that if a trackwalker was engaged in his duties upon said track, that the said operatives of the train had the right to presume that the said trackwalker would keep out of the way of said train."

When considered in connection with the foregoing instructions, there was no reversible error in the refusal of defendant's charges 51, 57, and 60, as follows:

"51. I charge you, gentlemen of the jury, that in so far as plaintiff's intestate is concerned, the operatives of the defendant's train were entitled to a clear track, and the plaintiff's intestate's duty was to look after his own safety."

"57. I charge you, gentlemen of the jury, that it was plaintiff's intestate's duty to look out for trains, and to put himself clear of the tracks upon which a train was approaching."

"60. Where a trackwalker has the duty of walking a track to watch out for trains, and defects in the roadbed of the railroad company, I charge you, that it is the duty of the trackwalker to look out for trains and to keep a lookout for approaching trains, and to avoid coming in contact with them."

These charges sought to put the sole duty upon plaintiff's intestate to insure his own safety—"to avoid coming in contact with" the approaching trains (whatever the special circumstances were in charge 60), "to look out for trains, and to put himself clear of the tracks upon which a train was approach-

646

ing," though it was his required duty to work there, and though the defendant's agents were advised of his immediate peril on the track (charge 57); defendant's employees, though warned of plaintiff's intestate, "were entitled to a clear track, and plaintiff's intestate's duty was *to look after his own safety*," after specific notice of his probable peril on the track—this was sought in charge 51.

That is to say, charge 60 was not erroneously refused when considered with the oral charge and given charges 46, 48, and 49. And the instruction that it was his duty "to avoid coming in contact" with approaching trains exacted too high a degree of duty of plaintiff's intestate—that of absolute insurance of his own safety, whatever the immediate and special circumstances were.

■ Charges 51 and 57 did not go far enough in defining the respective measures of duties of the parties, and were misleading in not explaining the duty of due care that rested upon the defendant in the premises, after notice of a human being on the track and ahead of the approaching train. After notice or warning of the presence of plaintiff's intestate on the track, and the probability of his injury, the latter did not, under the law of due care and the federal rule, solely and only assume the risk of causal negligence. That is, defendant and its agents (after the notice, if believed by the jury) were required to maintain a due lookout for a reasonable time and distance after notice, and by reason thereof, to take due precaution to warn or signal of the immediate approach of the train, and to reasonably employ the agencies or means at hand and under the circumstances to avoid unnecessary injury. See L. & N. R. Co. v. Fleming, 194 Ala. 51, 62, 69 So. 125; Northern Pacific Ry. v. Maerkl (C. C. A.) 198 F. 1; Erie R. Co. v. Purucker, 244 U. S. 320, 324, 37 S. Ct. 629, 61 L. Ed. 1166; Chesapeake & Ohio R. Co. v. De Atley, 241 U. S. 310, 36 S. Ct. 564, 60 L. Ed. 1016; Aerkfetz v. Humphreys, 145 U. S. 418, 12 S. Ct. 835, 36 L. Ed. 758; Boldt, Adm'x, v. Pennsylvania R. Co., 245 U. S. 441, 38 S. Ct. 139, 62 L. Ed. 385, 389; Southern Pacific Co. v. Seley, Adm'x, 152 U. S. 145, 14 S. Ct. 530, 38 L. Ed. 391; 4 Elliott on Railroads (3d Ed.) § 1862. It was the knowledge of dangerous proximity that raised the duty of due care as to the master. Pidcock v. Union Pacific R. Co., 5 Utah, 612, 19 P. 191, 1 L. R. A. 131; Foley v. Pettee Machine Works, 149 Mass. 294, 21 N. E. 304, 4 L. R. A. 51, 52, notes of exceptions to the general rule of assumption of risks; Hunter v. New York, Ontario & Western R. Co., 116 N. Y. 615, 23 N. E. 9, 6 L. R. A. 246; Georgia Pacific R. Co. v. Dooley, 86 Ga. 294, 12 S. E. 923, 12 L. R. A. 342; Kehler v. Schwenk, 144 Pa. 348, 22 A. 910, 13 L. R. A. 374, 27 Am. St. Rep. 633; O'Maley

v. South Boston Gas Light Co., 158 Mass. 135, 32 N. E. 1119, 47 L. R. A. 161. There was no error in refusing defendant's requested charges of which 53 was typical.

Charge 56 is bad in form, for the use of the words "even though," and its refusal was justified for this reason. The word "even" carries an intimation against the supposition. Birmingham Ry., Light & Power Co. v. Saxon, 179 Ala. 161, 59 So. 584; Birmingham & A. Ry. Co. v. Campbell, 203 Ala. 296, 300, 82 So. 546, and authorities; Manistee Mill Co. v. Hobdy, 165 Ala. 411, 51 So. 871, 138 Am. St. Rep. 73; Miller v. State, 107 Ala. 40, 60, 19 So. 37; Hammett v. Birmingham Ry., L. & P. Co., 202 Ala. 520, 81 So. 22.

■ The several charges requested as to the duty not to ring the bell or blow the whistle or give warnings, at the time and place, ignore the tendency of the evidence of the warning given; thus the duty in the premises and that of due care after warning were for the jury. There was no error in refusing misleading charges 58, 62, and 63, for the foregoing omission or defect. These charges invaded the province of the jury.

Charge 64 was abstract. There was no evidence to support the hypothesis that intestate attempted to cross the track without due precaution, when stricken.

■ There was no error as to the instruction given as to damages that may be awarded in proportion to the amount of negligence attributable to such employer, diminished by the contributory negligence of plaintiff's intestate. That is, if both parties were culpable, both must contribute to make good the damages. Burton & Sons v. May, 212 Ala. 435, 440, 103 So. 46. The court made plain, in the excerpt from the oral charge we have quoted above, that the word "damages" was intended for causal "negligence" and "combined (causal) negligence." The rule stated by Mr. Justice Van Devanter in Norfolk & W. R. Co. v. Earnest, 229 U. S. 114, 120, 33 S. Ct. 654, 657, 57 L. Ed. 1096, 1100, Ann. Cas. 1914C, 172, is: " * * * The statutory direction that the diminution shall be 'in proportion to the amount of negligence attributable to such employee' means, and can only mean, that, where the causal negligence is partly attributable to him and partly to the carrier, he shall not recover full damages, but only a proportional amount, bearing the same relation to the full amount as the negligence attributable to the carrier bears to the entire negligence attributable to both; the purpose being to abrogate the common-law rule completely exonerating the carrier from liability in such a case, and to substitute a new rule, confining the exoneration to a proportional part of the damages, corresponding to the amount of negligence attributable

to the employee. Second Employers' Liability Cases (Mondou v. New York, N. H. & H. R. Co.) 223 U. S. 1, 50, 56 L. Ed. 327, 346, 38 L. R. A. (N. S.) 44, 32 S. Ct. 169." Grand Trunk W. R. Co. v. Lindsay, 233 U. S. 42, 34 S. Ct. 581, 58 L. Ed. 839, 843, Ann. Cas. 1914C, 168.

▇▇ The whole evidence has been re-examined by the court, and on the insistence and argument of appellant that the verdict was excessive, under the facts of contributory negligence of the plaintiff's intestate in disregard of known rules of the company, and that of defendant's agents, as we have indicated, and under the federal statutes and decisions cited, the verdict was excessive.

ANDERSON, C. J., GARDNER, BOULDIN, and FOSTER, JJ., are of opinion that the judgment should be affirmed conditionally. in this the writer concurs. Justices SAYRE and BROWN express no view on this point. And it is the judgment of the court that unless appellee files a remittitur, as provided by law, with the clerk of this court within thirty days, reducing the judgment to $7,500, the judgment is reversed. And if such remittitur is duly filed, the judgment for $7,500, with interest from February 12, 1929, is affirmed.

▇▇ To the above sum, if accepted, interest is to be calculated at the legal rate from the date of rendition of judgment in the court below, but without the 10 per cent. penalty, as held by this court in numerous cases, among them: U. S. F. & G. Co. v. Millonas, 206 Ala. 147, 89 So. 732, 29 A. L. R. 520; M. L. & W. P. Co. v. Thombs, 204 Ala. 678, 87 So. 205; Western Union Tel. Co. v. Bashinsky, 217 Ala. 661, 117 So. 289.

Affirmed conditionally.

ANDERSON, C. J., and GARDNER, BOULDIN, and FOSTER, JJ., concur.

SAYRE and BROWN, JJ., dissent.

BROWN, J. (dissenting).

The authorities are agreed that in cases brought under the Federal Employers' Liability Act, the plaintiff has the burden of showing by evidence that justifies the jury in proceeding to a verdict, that the defendant, its officers, agents, or servants, were guilty of negligence which in whole or in part proximately resulted in causing the injury and death of the employee. Illinois Central R. Co. v. Johnston, 205 Ala. 1, 87 So. 866; Seaboard Air Line R. Co. v. Horton, 233 U. S. 492, 34 S. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475; Toledo, St. L. & W. R. Co. v. Allen, 276 U. S. 167, 48 S. Ct. 215, 72 L. Ed. 513; Southern Ry. Co. v. Gray, 241 U. S. 333, 36 S. Ct. 558, 60 L. Ed. 1030; Delaware, L. & W. R. Co. v. Koske, 279 U. S. 7, 49 S. Ct. 202, 73 L. Ed. 578; Atlantic Coast Line Ry. Co. v. Driggers, 278 U. S. 587, 49 S. Ct. 17, 73 L. Ed. 521. And negligence cannot be inferred from the fact of the injury. Toledo, St. L. & W. R. Co. v. Allen, supra.

The complaint on which the case was tried consists of two counts, the first ascribing the injury and death of plaintiff's intestate to the negligence of the defendant's servants or agents engaged in operating the train; and the second count ascribed his injury and death to subsequent negligence—negligence after the discovery of peril.

The pleas were the general issue, assumption of risk, and contributory negligence pleaded in repression of the damages. The court directed a verdict for the defendant on the second count of the complaint, and submitted the case to the jury on the question of simple initial negligence.

The defendant now insists that the court erred in refusing to direct a verdict on the other count, its contentions being: (1) That there is an absence of evidence showing or tending to show that the trainmen were guilty of negligence; (2) that the evidence shows that the negligence of said intestate is the sole proximate cause of his death; and (3) that the evidence shows that he assumed the risk from which his death resulted.

The facts developed by the evidence are few and without material conflict. The plaintiff's intestate, Sam Parker, on Sunday, May 6, 1928, while engaged in the work of a track-walker for the defendant, was run upon and killed by a locomotive pulling a train of forty cars upgrade. The railroad was double-tracked, and the train, as provided by the rules of the company, with which said intestate was familiar, was moving north on the south-bound main in obedience to the orders of the train dispatcher, because of some obstruction on the north-bound main. The train was a special, carrying cars loaded with strawberries, and was running on the time of regular train No. 6. Parker was fifty-nine years of age, an experienced trackman, without infirmity of hearing or sight, and was familiar with the tracks, roadbed, and schedules, having been engaged in this work for two or more years.

So far as appears in the evidence, no one saw Parker at the time he was stricken, or for four or five minutes previous thereto. The last person to observe him before the accident was Mrs. Belle Alvis, the wife of the section foreman, who testified as a witness for the plaintiff. She testified:

"Just before the train struck Mr. Parker I was in the house sitting in the door. I could see out of the door from where I was sitting. I saw Mr. Parker just a little bit before he was struck. The last time I saw him

he was going on, he had his wrench and pick, and we was going on up the railroad the last I saw of him. I saw him tightening bolts there near my house. After he was hit I looked at the bolts between the place where I saw him at the time, and the place where he was hit. We all did that. You could see where he had been tightening them. After he was hit I saw where something had turned there in the ground, at the place where he was tightening the bolt when he was struck. That was right at the rail joint. The bolts there had been tightened. * * * I saw some impression when this man was hurt on the ground * * * right at the joint. I did not see where he tightened any beyond that place. I did not hear the train blow before it struck Mr. Parker. My hearing was good at that time and is good now. I have been living there sometime, this coming fall it will be 12 years. * * * Well, really, I don't know—standing at the place where the man was struck—how far I can see the fireman coming north on an engine. I am no judge of distance. I counted the telephone poles the other day at the request of Mr. Denson. I don't know that I could say just now how many there are. My best recollection, there is (are) 12 I believe, the best I can remember. I know that the fireman rides on the left side of the engine.. * * * I did not go there right up to where this man was hurt. The train was between me and him when he was hurt, and I did not see the train hurt him. I had not seen him for some four or five minutes before the train hurt him, something like that. Between the time I had last seen him, and the time that he was hurt, there was an interval of four or five minutes. When I last saw him he was on the west rail of the south-bound track, and at this time he was almost in front of the tool house. When he got to the tool house, he went out of my sight. The place where I saw the disturbance on the ground was the fourth joint north from the tool house. I am sure of that. I went up there after they had taken Mr. Parker away. I didn't go right up to him at all while he was there. I did see him after he was hurt, but I was not close to him. I got over on the same side of the track he was on afterwards. The train pulled up to pick him up and I went across over there on the other side after the train had pulled up. I saw Mr. Parker when they were putting Mr. Parker in the caboose. I saw him before they put him in the caboose. I was down in front of my house part of the time, and then I went up above the tool house, but not up to him though. We naturally examined all those bolt nuts along there. By 'we' I mean me and my son, and several others. We examined the bolts at each of these joints from a place in front of my home on up north of the tool house. Of course I saw him tighten those in front of my house, and when he was tightening those bolts he was

facing south. In other words, when I saw him, he was tightening the bolts, and he was facing the direction from which the train was coming. The bolts I saw him tightening he was facing south. I saw him tighten several that way. He had been over to my house and when he left my house I heard this train coming. When he left my house I heard the train pulling this grade. It was making a lot of noise and I heard it then continuously on up to the time the accident occurred. Mr. Parker's hearing was all right as far as I know. I had seen him every day over a period of some four or five years, and his hearing was good so far as I know, it was good.

"Q. Did he tell you that he heard the train coming? Yes, sir; I asked him to sit down —my husband was there, and naturally I asked him to sit down, and he said 'No,' he would go across the track before the train blocked it. He heard the train coming, he was bound to have heard it. * * * The accident occurred on Sunday. Mr. Parker had been track walking along at that place for a good many years. I could not tell you just how many years, but it had been a good many. I don't know whether it has been as much as two years. I don't know how long he had been a track walker. * * * The section houses and tool house set there on the east of the track and on the curve. Back south of the tool house there is a curve, and it is up grade. * * * The north bound track was between my house and the south bound track. * * * No. 6 was due then, north-bound train. * * * This track, the south-bound track where Parker had been working, was on the other side of the north-bound track from my house and he said he wanted to get across before the train blocked him."

Virgil Alvis, twenty-three years old, a witness for the plaintiff, testified that he worked on the section, and on the day of Parker's death he was not on duty, but was walking down the railroad track for pleasure; that he saw Parker about a mile south of where he was killed; that Parker was then walking the south-bound main going north with his tools on his back; that about twenty or thirty minutes thereafter he met the freight train that ran upon and killed Parker; that it consisted of the locomotive and about forty cars, and was pulling the grade; that when he met the train he gave the engineer a signal. "It was a signal I have. I made a signal at the engineer that a track walker—that there was something ahead of him. I say I made a signal at the engineer that the track walker—that somebody was ahead of him (indicating by holding his hands up, palms about six inches apart and pointing ahead). * * * I should think the meaning of it was that there was something close ahead." That the engineer nodded his head, and wit-

ness "supposed" the nod of the head was an acceptance of the signal. This witness further testified that when he met the train it was about one-quarter of a mile south of Fire Tag Crossing, and after twenty cars passed him the whistle of the train was sounded.

Ed Alvis corroborated, in the main, the testimony of Virgil.

The defendant offered in evidence safety rules 3 and 33.

Rule 3 provides: "Trains may be run at any time, on any track, in either direction, and without notice, other than to those necessarily having to be informed of the operations. Employees must be governed accordingly and exercise every care to avoid accident. Watchmen, trackmen, and others are therefore urged to keep a sharp lookout in both directions and be protected· against the approach of trains."

Rule 33: "Trackmen must move to a safe distance from passing trains so as to avoid being struck by coal and other things which may fall or be thrown from them. *On double track trackmen are required to step off of both tracks when trains are passing, but in clearing approaching trains do not cross over or stand upon the other track. This applies to straight as well as curved track.*" (Italics supplied.)

The evidence shows that a copy of the book of rules had been furnished to Parker; that he had been especially instructed in respect thereto, and was familiar with these rules.

The evidence further shows that the approximate distance between telegraph poles was from two hundred to two hundred and fifty feet; that the vibration of a train such as that that killed Parker can be felt by one standing on the tracks a distance of two hundred feet.

There was also evidence offered by the defendant to the effect that Parker stated to one of his children in the presence of the nurse, when he kissed the child goodbye on the morning of the day of his death, that it would be the last time he would kiss the child, and other evidence tending to show some domestic trouble between Parker and his wife; but this evidence was disputed.

The foregoing is a statement of all the facts and circumstances bearing and attendant upon Parker's death, the environment of the occurrence, and its causation.

In the majority opinion much emphasis is given to the testimony of Virgil Alvis and his brother in respect to the signal given to the engineer, and I regard that evidence as of no importance for several reasons. The first is that there is no evidence that the engineer had any knowledge that Alvis was in any way connected with the defendant railroad. He (Alvis) was not on duty and had no right or authority to give signals, and the trainmen were under no duty to respect them. The signal given, as the evidence shows, was one of the witness' own creation, and not a signal prescribed by the defendant for government of its employees. If the signal be given the significance the witness seems to have attached to it, it was nothing more than that a trackman was somewhere ahead of the train and the trainmen had the right to assume that he would obey the rules of his employment and not stay on the track in front of a moving train. This evidence, in my judgment, was wholly immaterial and should not have been received. To hold that trainmen are compelled to take notice and observe the signal of every person who may be loitering along the railroad would be an unreasonable restriction upon the business of carriers.

The second reason is, if it had any force, it related to the question of subsequent negligence, as to which the trial court directed a verdict for the defendant.

In what respect were the trainmen negligent? There is no evidence as to the speed of the train; there is no evidence that the enginemen were or were not exercising reasonable diligence in keeping a lookout; there is no evidence that Parker was ever discovered by the trainmen in a position of peril, or that he did not step immediately in front of the locomotive, whether intentionally, inadvertently, or negligently.

To hold the defendant liable, it was incumbent upon the plaintiff to offer evidence justifying the jury to proceed to a verdict finding negligence, and to this end the evidence must remove the question from mere speculation and conjecture. St. Louis & S. F. R. Co. v. Dorman, 205 Ala. 609, 89 So. 70.

To infer from the evidence that the enginemen were keeping a lookout is not enough to show negligence; it must be further inferred that Parker was discovered in a place of peril, that the discovery of peril was in time to have taken preventive efforts to prevent the train from striking him, and that the trainmen failed to use all the means at their command to prevent the train from striking him. This is building an inference upon inference that extends into a field of mere speculation or conjecture, and is not permissible. A. C. L. R. Co. v. Cooper Lumber Co., 219 Ala. 484, 122 So. 661.

To infer that they were not keeping a lookout is not sufficient. It must further be inferred that Parker was upon the track in a place of peril, and if a proper lookout had been kept by the trainmen he would have been discovered in time to have prevented his death; this under the same rule would be nothing short of conjecture, guesses, or speculation. It is just as easy to infer that

Parker stepped upon the track immediately ahead of the train.

The case most nearly in point is Southern Ry. Co. v. McGuin, 153 C. C. A. 447, 240 F. 649, 651, decided by the Circuit Court of Appeals for the Fourth Circuit, in which the United States Supreme Court denied certiorari (244 U. S. 654, 37 S. Ct. 652, 61 L. Ed. 1373) without opinion, and in that case the Court of Appeals were divided on the question of the sufficiency of the evidence to show negligence; one of the judges dissenting. We quote from the opinion of the majority:

"The second proposition, that there was no proof of negligence on the part of the defendant, is one of difficulty. The train had passed Parati and Miller, another workman, when the accident occurred, and the question of negligence depends upon their testimony and that of Lynn, the engineer, and Daniels, the fireman. The fireman testified that he was looking out from the left side of the cab, and saw McGuin walking between the two tracks, where he would probably have been struck; he called the engineer's attention to him; the engineer blew a crossing signal; McGuin moved out of his sight; the engineer then applied the brakes and blew the alarm signal; he last saw McGuin for an instant within 8 or 10 feet of the engine, as he was coming across to the left rail of the south-bound track. The engineer testified that, upon the fireman speaking to him, he leaned out of the cab and saw McGuin between the two tracks, where he considered him safe, but he blew the station signal; McGuin looked over his shoulder, seemed to see the situation, stepped upon the north-bound track, where he was safe, and walked on, then looked straight back to the approaching train, seemed to become confused, started two or three ways in a second, and then darted across the south-bound track in front of the engine and was struck, when one more step would have put him clear. As he started across the track the alarm signal was given and the emergency brakes applied.

"Miller's testimony differs in the important particular that only the alarm signal was given to McGuin. He says that, standing on the track looking at McGuin, he saw him, just as he was passing out of sight, change his course towards the south-bound track; immediately afterwards, as the train approached, but before it was in sight, it blew a station signal, which he supposed was for Springfield or Edsall; after the train had passed him, he heard only the alarm signal, and that at the same moment the emergency brakes were applied. Miller, from the conditions surrounding him and McGuin, had his attention concentrated on the train and was on the alert for its signals; and if his testimony be accepted on the point of difference between him and the engineer and fireman with respect to the signal, it would support a reasonable inference that, if McGuin heard the train, he supposed it to be on the north-bound track and so moved to the south-bound track to escape it, that, if the fireman and engineer saw him, they must have seen him on or near the south-bound track, and that the engineer gave no signal to warn him of the unusual fact that a north-bound train was approaching on the south-bound track until it was too late for him to escape.

"Running a north-bound train on the south-bound track is not evidence of negligence, and all the employees of the railroad must take notice of the occasional necessity to make the change. Nevertheless, as that is not the usual method of running, the railroad company must take notice that their employees will naturally be somewhat less on guard against a north-bound train running on a south-bound track, and due care requires greater precautions. The case is thus distinguished from the cases holding that under ordinary conditions an engineer may assume that a man in the apparent possession of his faculties will get out of the way of an approaching train. Therefore it was not unreasonable to hold the railroad company guilty of negligence in this case, since it could well be inferred from Miller's testimony that the engineer, running a north-bound train around a curve on a south-bound track, saw McGuin on or very near the south-bound track, and gave him no signal till it was too late. This conclusion is so clearly consonant with common sense, and the principle has been so recently discussed and stated by this court in Southern Ry. Co. v. Cook, 226 F. 1, 141 C. C. A. 115, that reference to the adjudicated cases seems unnecessary.

"These considerations also dispose of the position that McGuin's death was due to a risk assumed by him. He assumed the risk of the occasional necessity to run trains on tracks intended for trains going in the opposite direction, but the risk assumed was subject to the limitation that such trains should be run with the care to be reasonably expected under such conditions. Whether this train was so run was, as we have pointed out, a question for the jury. There is good ground to say McGuin was guilty of contributory negligence in assuming, as he probably did, that the train was on the north-bound track. Belt Ry. Co. v. Skszypczak, 225 Ill. 242, 80 N. E. 115. But contributory negligence would not prevent a recovery.

"It is true that the District Judge refused to charge one or more unobjectionable requests of the defendant on the subject of assumption of risk, and that no instruction on the subject of assumption of risk was given

under that name. But the defendant was not prejudiced by the omission, for instruction F, given at defendant's request, is an accurate and clear statement that McGuin assumed all risks of his occupation and his situation, not due to defendant's negligence in failing to give warning after perceiving his peril."

The recovery for plaintiff was justified solely on subsequent negligence, of which there is no evidence in this case. See Southern Ry. Co. v. Gray, 241 U. S. 335, 36 S. Ct. 558, 60 L. Ed. 1030.

There is but one fact thoroughly established, and that is that Parker was guilty of negligence in going upon or remaining upon the south-bound track in violation of the rules of the company, and this should be held to be the sole proximate cause of his death. Davis v. Kennedy, 266 U. S. 147, 45 S. Ct. 33, 69 L. Ed. 212; Southern Ry. Co. v. Peters, 194 Ala. 101, 69 So. 611.

I therefore respectfully dissent.

SAYRE, J., concurs in the foregoing dissent.

### On Rehearing.

THOMAS, J.

The application for rehearing and argument in support thereof are on the specific grounds indicated as error in the views expressed in the original opinion and the holdings of the court: (1) That there was evidence of causal negligence of defendant's agents "proximately causing the death of intestate"; (2) that "Parker did not assume the risk of the injuries by which he met his death"; (3) that Parker was "not guilty of negligence which solely and alone proximately caused and contributed to his injury and death"; and (4) that appellant was not entitled to a new trial because the verdict of the jury was "contrary to the law and the evidence."

We will consider these due insistences now made by counsel.

There is not an insistence in the motion that there was error in refusing defendant's written charges such as 9, 13, and 42, having for their purpose the absolving of the engineer from negligence. There was the submission to the jury in the oral charge, the questions of simple negligence vel non of the "engineer operating" this train, or "those operating this train," to keep a lookout for trackmen who may have been "caught in the discharge of their duties unaware," and that of whether there was an "excuse for those so operating a train necessarily from giving signals such as an ordinarily prudent and careful man should have done under like circumstances"; and under all the circumstances whether the failure of signals taken with the failure of a lookout constituted negligence. Page 31 of the record.

In response to the insistence of appellant, we may say of the recent cases cited from the United States Supreme Court that they are each to be distinguished from the case for decision.

In Chesapeake & Ohio R. Co. v. Nixon, 271 U. S. 218, 46 S. Ct. 495, 70 L. Ed. 914, the holding was that a section man engaged in maintaining a track assumes the risk of injury from negligence on the part of train operators in failing to maintain a lookout for such employees along the track. There were no special and compelling circumstances for the lookout, as after specific warning and while running contrary to the usual course of transportation.

In Toledo, St. Louis & Western R. v. Allen, 276 U. S. 167, 48 S. Ct. 215, 218, 72 L. Ed. 515, 517, the holding was that a car checker working in a railroad yard at night assumes the risk of injury from the shunting of cars without warning, along a track adjoining the one on which he is at work, *where he is familiar* with the conditions and the method of that work. The court said: "In the absence of knowledge on their part that he was in a place where he was liable to be struck and oblivious of that danger, they were not required to vary the switching practice customarily followed in that yard or to warn or to take other steps to protect him. There is no evidence to sustain the allegation that the other employees saw, or negligently failed to discover, plaintiff in a 'position of peril and oblivious thereof.'" Thus was this case clearly differentiated from the case at bar.

The case of Atlantic Coast Line Railroad Company v. Davis, Adm'r, 279 U. S. 34, 49 S. Ct. 210, 211, 73 L. Ed. 603, was that of a volunteer leaving a place of safety for doing the work, and taking a position of obvious danger where he would be struck by the boom of the shovel if it made a full swing and he did not move out of its path; held no liability. In this case it is observed: " * * * It is clear that, even if the Railroad Company then owed him any duty in this respect, there was no substantial evidence that there was any negligence upon its part in failing to furnish a safe place in which to work. The evidence is undisputed that there were several places in which he could have stood in spotting cars, all of which were reasonably safe and well adapted to the performance of the work, and in which he could not have been struck by the swinging boom. And the inevitable conclusion from all the evidence is that he voluntarily abandoned the safe position on the running board which he at first assumed and placed himself in a position of extreme danger on the 'jack-arm,' a place not furnished for the performance of this work and ill adapted thereto, and one of obvious danger in which he would inevitably be struck if the boom made a full swing unless he moved out of its path; and thereby through his own

negligence, as the sole and direct cause of the accident, brought on his own death." Thus this case is distinguished by its unusual and peculiar facts calling for the duty of maintenance of a lookout at the time and place.

And in Unadilla Valley Railway Company v. Caldine, 278 U. S. 139, 49 S. Ct. 91, 73 L. Ed. 224, 232, the conductor was killed in violation of transportation orders. The observation of Mr. Justice Holmes is: "The phrase of the statute, 'resulting in whole or in part,' admits of some latitude of interpretation and is likely to be given somewhat different meanings by different readers. Certainly the relation between the parties is to be taken into account. It seems to us that Caldine or one who stands in his shoes is not entitled as against the Railroad Company that employed him to say that the collision was due to any one but himself. He was in command. He expected to be obeyed and he was obeyed as mechanically as if his pulling the bell had itself started the train. In our opinion he cannot be heard to say that his subordinate ought not to have done what he ordered."

In the case of Atlantic Coast Line Railroad Co. v. Driggers, 279 U. S. 787, 49 S. Ct. 490, 73 L. Ed. 957, the manner of the injury is thus stated by the court:

"Driggers had been employed by the Railroad Company for about five years, and for about six months had been a member of a switching crew. He was injured by stepping off the footboard of the switch engine while it was in motion and striking the engine of a local passenger train that was passing along an adjacent track. * * *

"The undisputed evidence shows that Driggers had no duty which required him to dismount from the switch engine at that time, but was supposed to remain on the engine, although it was optional for him to get off and throw the switch.

"On the other hand, the undisputed evidence shows that the passenger train, which was a few minutes behind time, and was running from 35 to at least 50 miles an hour, had a clear and unobstructed right of way on the south-bound line. The engineer was on the lookout ahead, had blown signals at a point about 2,000 feet to the north, and again before reaching the scene of the accident; and the automatic bell on the engine, which he had set in motion, was ringing continuously up to the time of the accident. There was no obstruction whatever on the line ahead. Although the engineer saw the switch engine about to enter in a southerly direction on the northbound main line, there was nothing to indicate that any member of its crew would attempt to dismount between the two lines; and Driggers suddenly struck the side of the engine behind the pilot, in a position where he was not and could not have been seen by the engineer, and when it was impossible to stop the train.

"Under these circumstances, it is clear that Driggers, by his own negligence, as the sole and direct cause of the accident, brought on his own death, and that there is no ground upon which the liability of the Railroad Company may be predicated. Compare Atlantic Coast Line R. Co. v. Davis, supra, page 39 of 279 U. S. (73 L. Ed. 603, 49 S. Ct. 210), and cases cited."

■ These cases are each distinguishable from that before us. And the instant case is not within the rule that where the negligence of an employee is the sole proximate cause of his injury, he will not be permitted to recover under the Federal Employers' Liability Act (45 USCA §§ 51–59). L. & N. R. Co. v. Fleming, 194 Ala. 51, 69 So. 125; L. & N. R. Co. v. Jacobson, 218 Ala. 384, 386, 118 So. 565; Illinois Cent. R. Co. v. Skaggs, 240 U. S. 66, 36 S. Ct. 249, 60 L. Ed. 528.

Under the decisions and undisputed evidence, the violation of the defendant's rule by the plaintiff—his contributory negligence—was not the sole and proximate cause of his injury and death. And such is the result whether tested by the state or federal decisions.

■ The insistence in motion for a new trial was that the verdict was "contrary to the law"; there was no specific ground that the verdict rendered was contrary to the instructions of the court and given charge C. The matter, on original hearing, in respects now to be considered, was incidentally mentioned in brief filed of date of November 25, 1929, and now urged in brief on rehearing. The matter and context of the original brief is:

"The so-called signal to the engineer by witness Alvis a mile and a half or two miles down the road from where the accident occurred, has no bearing on the case as we will show by Alabama authorities later. The Court said that the engineer was not negligent. * * *

"As stated the engineer was exonerated of all negligence by the Court. Charge C. p. 38 and subsequent negligence count, the Court charged out."

This was not a sufficient insistence in the motion and brief to present the question of conflict in instructions given and now being urged on rehearing. If it be conceded, without deciding, that the question was presented and that charge C presented correctly the question of law, it will be noted that the trial court had refused defendant's request for general affirmative instructions as to count 1 and as to the negligence vel non of the engineer (refused charges as to the engineer, operators, and employees are A, D, E, F, and G, and as to the engineer are 9, 13,

and 42); and the court submitted to the jury the negligence vel non of such engineer in the oral charge under count one.

The court no doubt fell into error in giving charge C, after having refused the foregoing charges and giving charge H, the latter having application to subsequent negligence under count 2, which count was eliminated by several of defendant's written instructions in several forms.

The application for rehearing further urges error for refusal of defendant's request for the general affirmative charge on the grounds: (1) That there was failure of evidence of negligence of defendant's employees (in charge of the engine) under the Federal Employers' Liability Act; (2) Parker assumed the risk, whether ordinary or extraordinary risks, or those due to the negligence of defendant's employees, if they were known and appreciated by Parker. Then the Nixon Case, 271 U. S. 218, 46 S. Ct. 495, 70 L. Ed. 914, is urged for the position taken as to the affirmative instruction. The facts have been stated on the original hearing. We have shown heretofore that the Nixon Case was not parallel, by reason of the absence of special and controlling circumstances—as that, while plaintiff's intestate was discharging his duties on the track and those in charge of the engine had due and timely warning of the immediate presence of some human being on the track ahead, and this notice was not denied by the enginemen, who proceeded without a lookout or signals, contrary to the usual course of travel thereon and under the special and material circumstances and facts, and injured Parker; a due lookout on the part of the enginemen and timely signals would (no doubt) have averted the collision. This made due care vel non on the part of the fireman and engineer a jury question, as applied to the facts of the case.

In response to the dissenting opinion, we will say that the point at which appellee's intestate was killed was shown by the evidence to have been a short distance in a northerly direction from a curve in the track in the direction in which the train was proceeding; and that the engineer could not from his position see the deceased until the curve was rounded, but that one on the fireman's side of the engine could have seen deceased for a sufficient and considerable distance to have given him effective warning; and that when the engineer had been notified that some one was on the track ahead of the train, he gave a *caution signal* with the whistle. We think that on account of the inability of the engineer to see ahead along the track for a sufficient distance, and that such observation was open to one on the fireman's side of the engine, and that the caution signal should have been notice to the fireman a sufficient distance away from the place, all together imposed upon the fireman certain duties to deceased, which the jury might reasonably infer were not rendered. There was a jury question as to the negligence of the fireman, and therefore there was no error in refusing charge D for the reasons we have indicated, and no error in ruling on the charges indicated in the dissenting opinion of Mr. Chief Justice ANDERSON.

That the rehearing be denied is the judgment of GARDNER, J., and the writer, BOULDIN, J., as stated, and FOSTER, J.

Mr. Chief Justice ANDERSON and BROWN, J., dissent on the grounds respectively indicated.

KNIGHT, J., not sitting.

BOULDIN, J. (specially concurring).

I have reached the conclusion that the running of the north-bound train on the south-bound track on the schedule time of a regular north-bound train, which regularly ran on the north-bound track, presented such condition of danger to persons who might rightfully be on the south-bound track, including trackmen, that it cannot be said as a matter of law there was no duty on the trainmen to keep a lookout for deceased. Without regard to any signal given the engineer, I conclude the duty to keep a lookout under the circumstances was one for the jury. Such duty, while rounding a curve extending to within some 65 feet of the place of injury, during which time the engineer could not see the track ahead, devolved on the fireman. There is some evidence that deceased was at work on the track for such time that a proper lookout would have discovered his danger, calling for prompt preventive measures, such as giving a warning signal. Hence, I conclude there was no error in refusing the charge exonerating the fireman.

I desire to limit my concurrence to what is here said.

ANDERSON, C. J.

I think that this case should be reversed upon a point which seems not to have been considered in either of the foregoing opinions.

The complaint, as finally amended, contained two counts, 1 and 2. Count 2 was charged out both by a given written charge and the oral instructions by the trial court. The jury was also instructed by the defendant's given charge (c) that the plaintiff could not recover under count 1 of the amended complaint on account of any negligence on the part of the engineer. This, in effect, eliminated the engineer from the case and the verdict could only be referable to the negligence of the fireman or some other servant charged with the operation of the train.

The defendant, by its refused written charge (d), sought to exonerate the fireman

of any negligence, under count 1 of the amended complaint, and this charge should have been given, and its refusal was argued and insisted upon as error in appellant's brief. See page 58.

The only theory upon which the fireman could possibly be charged with negligence would be for a failure to keep a lookout. It may be questionable, under ordinary conditions, whether the engineer had to keep a constant lookout at this point, and the opinion of THOMAS, J., proceeds upon the theory that this should have been done because of special circumstances, that is, the engineer had warning and the train was running against the traffic, that is, going north on a south-bound track. This, however, did not necessarily impose the duty upon the fireman of keeping a lookout.

In the first place, the engineer is in charge of the engine, and the duty of the fireman as to keeping a watch is, in a sense,' secondary and he is not called upon to do so unless he knows that the engineer is not doing so, or cannot do so, even at places where a lookout is required, and there is nothing in the record to show that the fireman was required to keep a lookout at this point, or that the engineer was not doing so or could not do so. While the opinion of THOMAS, J., attaches much importance to a signal given the engineer and the meaning and importance of same in connection with the fact that the train was running against traffic, that is, going north on the south-bound tracks, there is not the slightest evidence that the fireman saw the signal or had any knowledge whatever of same. It also appears that the engineer blew the whistle in recognition of the signal and, if such was the case, this was, in a sense, a notice to the fireman that the engineer was on the lookout.

As to whether or not the trial court properly eliminated any negligence on the part of the engineer, we are not called upon to decide, as it was favorable to the appellant and, having removed this issue from the case, it was highly important that the trial court should have given the defendant's requested charge (d) as the proof fails to show any negligence on the part of the fireman and, with that of the engineer eliminated, the only rational conclusion is that the verdict for the plaintiff was based on the conduct of the fireman.

On the other hand, had the engineer not been charged out of the case, the defendant was still entitled to have his requested charge (d) given as the complaint did not confine the negligence to the engineer, but to the defendant's officers and servants generally and which included the fireman.

I think that the rehearing should be granted and the judgment of affirmance set aside and that the cause should be reversed and remanded.

BROWN, J., while adhering to his original opinion, also concurs in these views.